THOMAS V. FONDA et al., Appellants, *v.* CARL A. PAULSEN et al., Respondents, et al., Defendant.

Third Department, February 6, 1975.

*Arthur William Braiman* (*Norman Bard* of counsel), for appellants.

*Martin, Clearwater & Bell* (*Edward J. Amsler* of counsel), for respondents.

GREENBLOTT, J.   This is a malpractice action against three medical doctors arising out of the failure of some or all of the defendants to properly diagnose a cancerous condition from which it is expected that plaintiff will die.   The complaint was dismissed upon Special Term's determination that the action was barred by the three-year Statute of Limitations.   Plaintiff contends on this appeal that this determination was error because factual questions exist bearing upon the applicability of a Statute of Limitations defense.

The pertinent circumstances are as follows. In May, 1969 the defendant Nelson performed a biopsy on plaintiff's right buttock and pelvic area. The slides were read by the defendant Oram, a pathologist, who concluded that the mass from which the excision had been taken was noncancerous. These results were reported to plaintiff, and subsequent events are the subjects of dispute.

Defendant Paulsen practiced in association with Nelson[1], and there is confusion as to his own version of the details of his contacts with plaintiff. In his affidavit submitted in support of his motion to dismiss the complaint, he states that he first treated plaintiff in January of 1970 when "he complained of soreness in the back and buttocks, and evidenced a mass in the latter region." Thereafter, Paulsen avers he did not see plaintiff again until December, 1970, and then in connection with a knee injury. However, plaintiff produced a letter signed by Paulsen, dated May 15, 1970, which indicates that he had seen plaintiff on January 20, 1970, February 10, 1970, March 3, 1970 and April 14, 1970. The tenor of this letter as a whole suggests that these visits related primarily to injuries suffered in a January, 1970 accident, but it is nevertheless noted that at the time of the February visit, plaintiff complained of discomfort in the right buttock and "examination revealed a 4 cm. in diameter deep-seated mass in the buttock which was tender" and that, as of the April visit, plaintiff had "persistent tenderness over the right pelvis."

Subsequent events are not alleged with specificity until January, 1972. At that time, plaintiff was referred by Nelson and/or Paulsen to a Dr. Voss who performed a second biopsy. Dr. Oram participated in the evaluation of the tissue excised during this second biopsy, and it was discovered at this time that plaintiff suffered from a malignancy which had existed since 1969 and which, allegedly, should have been revealed by the 1969 biopsy.

This action was commenced in May, 1974, clearly beyond the three-year period of limitation if measured from the original allegedly negligent diagnosis. Plaintiff contends, however, that the Statute of Limitations should not have commenced to run prior to January, 1972 under the continuous treatment doctrine

---

1. Plaintiff alleges that Nelson and Paulsen were partners, so that one would be liable for the negligence of the other. It is not disputed that they had their offices at the same address and their stationery contained both names, but defendants deny a partnership relation. This issue can only be resolved after further development of the facts at trial.

as enunciated in *Borgia* v. *City of New York* (12 N Y 2d 151), and that at the very least there are issues of fact which require a jury determination as to whether or not plaintiff underwent continuous treatment.

Special Term, in granting defendant's motions to dismiss, was of the view that there was no "treatment" subsequent to May, 1969. We are of the opinion that this view was too narrow. If a patient continues under post-operative observation by his physician and is advised that his condition is being cured, this is as much "treatment" as affirmative acts such as surgery, therapy, or prescription of medicines (cf. *Toman* v. *Creighton Mem. St. Josephs Hosp.*, 191 Neb. 751). Any other view must be based on the erroneous supposition that only acts of commission, but not acts of omission, can constitute negligence; there would be little chance for legal redress by a patient who has been the victim of an alleged malpractice who is advised that time is the only barrier to a complete cure, when in reality time is a barrier to a cause of action. Moreover, in this case, plaintiff was operated on by Dr. Voss in January, 1972 at the behest of either Nelson or Paulsen. Under no imaginable theory can it be concluded that, at the very least, this act did not constitute treatment just as if Nelson or Paulsen had prescribed for plaintiff a drug.

The problem in this case, then, is not whether there was "treatment", but whether it was "continuous", for there was a gap of approximately 20 months between plaintiff's contacts with Nelson and/or Paulsen with regard to the mass in his right flank[2], and a gap of 32 months between contacts with defendant Oram (cf. *Chartener* v. *Kice*, 270 F. Supp. 432 [E. D. N. Y.], indicating that under New York law, the Statute of Limitations did not commence to run until the plaintiff's second treatment in March, 1961, when her first treatment had occurred in September, 1960). There is no New York case which supplies an adequate definition of the term "continuous" as it applies to treatment in a malpractice case, but we feel that one can be extracted by an examination of the rationale underlying *Borgia*. That case was easier in one respect, in that the plaintiff's treatment was indeed completely uninterrupted. He had been admitted to the defendant hospital in October, 1956, and was not discharged until February, 1958. The alleged acts of

---

2. We are assuming here that plaintiff's visit of April 14, 1970 was the last dealing with his buttock complaint until January, 1972, for while plaintiff attempts to suggest visits later in 1970, none are set forth with any specificity whatsoever.

negligence occurred during this hospitalization, and the Court of Appeals held that the Statute of Limitations there applicable should not be deemed to have commenced running until the treatment terminated on the date of the patient's discharge. Nobody would reasonably conclude from this that treatment must be on a day-to-day basis, but that does not tell us when we reach the point at which treatment terminates as a matter of law. In *Borgia,* the Court of Appeals explained its adoption of the continuous treatment doctrine by stating that "it would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital superintendent" (12 N Y 2d at 156). The Court of Appeals thus recognized that an individual with a medical complaint, who believes that prior treatment or care with relation to that complaint has been inadequate or negligent, cannot seriously be expected to commence a lawsuit when there exists the alternative of seeking corrective treatment, Thus, we feel that a fair interpretation of the rule of *Borgia* is that, if at the time when the Statute of Limitations would have expired had it run from the last act of malpractice, a patient is still in a relationship of care or treatment with the defendant physician for the same or related illnesses or injuries, the statute shall not be deemed to have commenced running so long as such treatment continues.

In the present case, plaintiff could have commenced a timely lawsuit in January, 1972. Instead, he returned to Drs. Nelson and Paulsen to be treated for a condition for which he had originally seen them in 1969 and, having never been cured, was still the source of complaints. In these circumstances, it would be appropriate to invoke the salutary purpose of *Borgia*[3]. Since there is at the very least a question of fact on the issue of when plaintiff's treatment lost its continuity (see *Wear* v. *State of New York,* 33 A D 2d 886), it was error for Special Term to conclude as a matter of law that the Statute of Limitations was a bar to the causes of action.

With respect to Dr. Oram, the gap in "treatments" was longer, but that is at most a circumstance to be weighed in the fact finder's determination of whether he participated in a continuum of treatment. Moreover, we are of the opinion that to hold Oram as having "treated" plaintiff only at the times of his biopsy diagnoses is to take a view of the case which is

---

3. Defendants contend that *Schiffman* v. *Hospital for Joint Diseases* (36 A D 2d 31, mot. for lv. to app. den. 29 N Y 2d 483) requires that their defenses be sustained. We disagree. While the facts in that case are comparable, the plaintiff there explicitly disclaimed reliance on *Borgia's* continuous treatment theory.

analogous to the outworn theories under which privity of contract was required before liability could ensue. The nature of a pathologist's work is such that he rarely, if ever, has a direct physician-patient relationship with an individual—in other words, he never treats patients in the conventional sense—but his work is often the basis upon which the nature of subsequent treatments to be given by the attending physician is determined. Such is what appears to have occurred in the case at bar. In the somewhat unique circumstances presented in the case at bar, where the pathologist should have reasonably expected that his work would be relied on by other practitioners in determining the mode of treatment, we feel it appropriate to impute to that pathologist or diagnostician constructive participation in that treatment so long as it continued. In this way, the practitioner guilty of the initial malpractice is subject to the same period of limitations as those who continued the malpractice as a reasonably foreseeable result of the initial wrong. Of course, there may have come a point where continuation of a course of treatment was negligent in and of itself irrespective of the original erroneous diagnosis; at that point, the diagnostician's constructive continuance in the treatment would have ceased. But the determination of such a question is one of fact based upon medical evidence which can only be decided by the jury. On the unique set of facts alleged in plaintiff's complaint, we feel that submission of these issues to the jury is appropriate.[4]

The order should be reversed, on the law, and the motions denied with costs.

SWEENEY, J. (dissenting). I am unable to agree with the result arrived at by the majority and, therefore, vote to affirm.

The alleged malpractice of Dr. Oram occurred in May, 1969 when he analyzed excised tissue removed from plaintiff and found it benign. He performed a similar analysis in January, 1972 and found that tissue to be cancerous. On these facts the Statute of Limitations had clearly run and the action barred as against him. With regard to the other two doctors, the facts

4. Furthermore, since an action for an indemnity does not accrue until payment of a judgment, Nelson and/or Paulsen might be able to maintain a cross claim against Oram for acts which might have been the basis for an indemnity claim had Oram not been made a party to this action. Therefore, even if we were to hold that Oram did not treat plaintiff or that these "treatments" were not continuous, and dismiss the plaintiff's action against Oram as barred by the Statute of Limitations, Nelson and/or Paulsen would be able to bring Oram back into the case as a third-party defendant. Thus, in the interests of justice and judicial economy, we do not feel it appropriate to remove Oram from the action at this stage.

developed in this record do not bring the acts of alleged malpractice within the doctrine of continuous treatment as enunciated in *Borgia*. Consequently, Special Term properly granted the motion of defendants for summary judgment dismissing the complaint.

HERLIHY, P. J., and MAIN, J., concur with GREENBLOTT, J.; SWEENEY and REYNOLDS, JJ., dissent and vote to affirm in an opinion by SWEENEY, J.

Order reversed, on the law, and motions denied, with costs.