CATHERINE MCDERMOTT, Appellant, v DOUGLAS TORRE et al., Respondents.

First Department, July 16, 1981

### APPEARANCES OF COUNSEL

*Gerald J. Mondora* for appellant.

*Stanley R. Goodman* for Central Health Laboratories, Inc., and others, respondents.

*Glenn W. Dopf* of counsel *(Martin, Clearwater & Bell, attorneys)*, for Douglas Torre, respondent.

### OPINION OF THE COURT

BIRNS, J.

These consolidated appeals present recurring and novel issues of law concerning the applicability of the doctrine of "continuous treatment" as it affects the tolling of the Statute of Limitations in medical malpractice actions.

As will be seen, those issues have coalesced in a complaint so drawn as to provide plaintiff, despite the passage of a protracted period of time, with a belated opportunity to recover damages.

The essential facts, taken from the allegations of the complaint (deemed true under CPLR 3211, subd [a], par 5, for the purposes of the motions *sub judice)*, as well as from the parties' affidavits,[1] are not in dispute, except as to the dates of visits and treatment rendered on each occasion.

In May, 1974 plaintiff was examined by defendant Torre, a dermatologist, for a dark mole on plaintiff's ankle. On May 10, 1974 Torre surgically removed the mole and sent a specimen to defendant Laboratories[2] for a biopsy. Laboratories' report to Torre indicated no malignancy.[3]

---

1. Torre, however, submitted no personal affidavit in support of his motion.

2. All laboratory defendants and Revlon Corporation are related corporations or successors in interest to one another and for purposes of this appeal are considered one entity, hereinafter referred to as Laboratories.

3. Torre characterized the condition as a "compound nevus", which according to his brief but without citation to the record, was the conclusion indicated in the biopsy report of Laboratories. No copy of the biopsy report was attached.

Shortly thereafter Torre so advised plaintiff and indicated nothing further had to be done.

Although not recalling the exact dates of further treatments, plaintiff alleges (as shown by dates on her canceled checks)[4] that she visited Torre on at least eight subsequent occasions, concededly not only for her ankle condition.

On numerous occasions she complained of discoloration of the ankle area.[5] On at least one such occasion Torre referred back to the biopsy report, and possibly to the slide itself, to support his "negative" diagnosis concerning any malignancy of the "nevus" (mole) area. Plaintiff avers that her last treatment by Torre was in late September or early October, 1976 (Torre contends it was September 13, 1976),[6] at which time the ankle area where the mole had been removed was "badly inflamed, swollen, and band of inflamation, approximately one inch wide encircled [the] ankle."

She was subsequently examined by defendant Ju[7] in May, 1977, and again, purportedly based upon the original biopsy report, was told that the ankle site from which the mole had been removed was benign, surgically healed, and free of any disease.

In May and June, 1978 plaintiff entered New York Hospital. On the first occasion, in May, it was discovered by a Dr. Thorbjarnson (her surgeon) that she had a malignant tumor in her groin. The surgeon proceeded to remove the tumor. He noted the tumor in the groin "might then be from a mole, suspicious looking which was removed from her left ankle four years ago." On the second occasion, in June, the surgeon did a groin dissection and at the same time removed a malignant melanoma from plaintiff's ankle

---

4. The dates of plaintiff's canceled checks are: June 14, August 14, November 4, 1974; February 14, July 29, August 8, 1975; October 21, 1976.

5. Torre's brief, again without citation to the record, disputes this and indicates that only on the first two visits, the dates of which he asserts were May 10 and May 17, 1974, was plaintiff treated for the ankle "nevus". Torre maintains in his brief that the subsequent visits and treatments were as follows: May 31, July 19, December 5, 1974, herpes; June 12, 1975, insect bites; July 29, 1975, molluscum contagiosum; August 18 and November 14, 1975, herpes; September 13, 1976, infection of leg near nevus scar.

6. See footnote nos. 4 and 5.

7. Ju has not responded on this appeal.

at exactly the same site where the mole was removed by Torre and where discoloration had persisted. On the third occasion, later in June, plaintiff had further surgery. A wide excision was performed at the mole site and a large skin graft was taken from her right buttock and engrafted into the area where the excision was performed on her ankle. She thereafter received physical therapy because of the radical surgery performed on her leg and was left with a severe limp.

Plaintiff also alleged that, according to the records of New York Hospital, in 1978 its Pathology Department reviewed the slide taken by Laboratories upon which the original diagnosis was made, and determined that the slide in question was misread, that in fact it revealed a malignant melanoma, and not a benign condition as originally reported, and concluded that there was a direct relationship between the ankle malignancy and the malignancy in plaintiff's groin area.

In December, 1978 plaintiff consulted a plastic surgeon (Dr. Smith) concerning reconstructive surgery of the damaged left leg, and did not receive a complete evaluation until April, 1979.

This action was commenced soon afterwards. Summons and complaint were served upon Dr. Torre in July, 1979 and on Laboratories in August, 1979. The complaint alleged various causes of action in malpractice against Torre, Ju and Laboratories, in that the defendants negligently failed to diagnose from the original biopsy test the malignancy of plaintiff's ankle in 1974, and that this misdiagnosis continued over the course of her "treatment" by Torre and Ju, terminating in October, 1976.

In August, 1979 Laboratories moved pursuant to CPLR 3211 (subd [a], par 5) to dismiss the causes of action against them. Laboratories asserted that the causes accrued when Laboratories allegedly misdiagnosed plaintiff's ankle tissue on May 10, 1974, more than three years prior to the commencement of the action, and thus the action was barred under the three-year Statute of Limitations (CPLR 214, subd 6 [pre-1975 amdt]) in effect when the alleged malpractice occurred.

In opposition, plaintiff contended that subsequent to May 10, 1974 she had received a continuous course of treatment by the physicians, that under the principles of the "continuous treatment" doctrine *(Borgia v City of New York*, 12 NY2d 151), the statute was tolled and the cause of action did not accrue until September or October, 1976, the date of her last treatment for the condition, and accordingly the action was timely. Plaintiff argued that under the holding in *Fonda v Paulsen* (46 AD2d 540), the continuous treatment by the physicians was imputed to Laboratories because of the physicians' reliance upon the laboratory report, and that it was a jury question whether Laboratories had, in effect, participated in such continuous treatment so as to extend the time to commence this action against Laboratories to September or October, 1976. She maintained, therefore, that dismissal of the action against Laboratories at this juncture was precluded.

Special Term (SHAPIRO, J.), citing *Davis v City of New York* (38 NY2d 257) and *McQuinn v St. Lawrence County Lab.* (28 AD2d 1035, lv to app den 21 NY2d 644), rejected plaintiff's argument that the treating physicians' reliance upon Laboratories' diagnosis imputed the "continuous treatment" doctrine to Laboratories. The court found that *Fonda (supra)* was distinguishable and, in any event, should not be followed, and held that the Statute of Limitations was a bar to the action against Laboratories. By order entered January 25, 1980 and judgment entered February 7, 1980 the action against Laboratories was dismissed.

In March, 1980 Torre moved for summary judgment (CPLR 3212) to dismiss the complaint against him on the ground that the action was barred by the Statute of Limitations. He maintained that the alleged acts of malpractice occurred before July, 1975 and therefore CPLR 214 (subd 6), the three-year statute governed, so as to bar the action. He argued, alternatively, that assuming he last treated plaintiff in October, 1976, the cause of action accrued on that date, the two and one-half year statute, CPLR 214-a, applied, and accordingly the action was barred.

Special Term (HELMAN, J.) agreed. It held that under the doctrine of "continuous treatment" the last date of

such treatment was October, 1976 and that the applicable Statute of Limitations, which the court identified as CPLR 214-a, barred the action. By order entered June 6, 1980 and judgment entered August 13, 1980 the action against Dr. Torre was dismissed.

In April, 1980 plaintiff, having already suffered dismissal of the malpractice action, brought a separate action against defendant Laboratories, grounded in breach of contract, ostensibly to obtain the benefit of the six-year Statute of Limitations (CPLR 213) applicable to contract actions.

Special Term (TYLER, J.) held that the action was, in essence, for malpractice and not breach of contract. Therefore the malpractice limitation statute applied so as to bar the action. By order entered October 2, 1980 the action was dismissed as against Laboratories.

Plaintiff appeals from all three holdings as reduced to the afore-mentioned orders and judgments.

All parties reiterate on this appeal the respective arguments presented at Special Term. In addition, Dr. Torre amplifies his argument. He maintains the treatments were too sporadic to constitute "continuous treatment". He contends, alternatively, on the basis of *Davis v City of New York (supra)*, that even were the "continuous treatment" doctrine applicable, the last date of such treatment and accrual of the cause of action was November, 1975.[8] He argued that the next visit, on September 13, 1976 (plaintiff asserts it was October 21, 1976), was "discrete, intermittent and absolutely independent of the November, 1975 visit." Thus, Torre claims, the action commenced against him in July, 1979 was time barred.

Laboratories enlarges its argument, disputing, *inter alia*, that the "continuous treatment" doctrine, even if applicable to Torre and Ju, could be imputed to it.

In order to determine whether it was proper to dismiss the action as against Laboratories or Torre, we must:

First: consider whether the "continuous treatment" doctrine is applicable.

Next: consider whether the doctrine was imputable to Laboratories.

---

8. See footnote no. 5.

Finally: ascertain whether the three-year limitation (CPLR 214, subd 6) or the two and one-half year limitation (CPLR 214-a) applies.

*Continuous Treatment Doctrine:*

Case law does not clearly define activity that would constitute or qualify as "continuous treatment" so as to toll the statute. In *Borgia v City of New York* (12 NY2d 151, *supra),* the infant plaintiff was brought to Kings County Hospital on October 10, 1956 for treatment of burns. That night, at the hospital, the child suffered permanent brain damage because of loss of oxygen due to malpractice of the hospital's physicians and nurses. Although the burns healed in a short time, the infant remained until his discharge on February 14, 1958. The infant recovered a verdict after a jury trial, upon which a judgment was entered. The Appellate Division (16 AD2d 927) reversed the judgment solely on the ground that the notice of claim against the city which was a precedent to recovery was not filed within the time required (General Municipal Law, § 50-e). In reinstating the verdict, the Court of Appeals held that (12 NY2d, at p 155) : "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint, the 'accrual' comes only at the end of the treatment." Therefore, the notice was filed within the time required. This principle was not disputed by the dissent, which commented (12 NY2d, at p 160) : "Our courts have long recognized, however, that a strict application of this rule [viz., that the cause of action accrues from the date of the original malpractice] may lead to an unjust result and, in an attempt to ameliorate its rigors, have engrafted the 'continuous treatment' doctrine on to the rule. *This doctrine,* now a well-recognized rule of law, *has been confined in its applicability to cases which factually presented some plausible theory for concluding that the injury complained of was the result of a continued course of treatment, and not merely the result of one or more separate and distinct acts."* (Emphasis supplied.)

Subsequently, *Fonda v Paulsen* (46 AD2d 540, *supra,* a case markedly close on point for the principles relied upon by plaintiff) was decided. There, one of the defendants

performed a biopsy in May, 1969 on plaintiff's buttocks and pelvic area, concluding from slides that the area was noncancerous. Thereafter, on approximately four occasions in 1970, the last in April of that year, another defendant saw plaintiff who, although being treated for other illnesses on such occasions, complained of soreness in the area disgnosed. In January, 1972, as a result of another biopsy performed, it was discovered that the diagnosed area was in fact misdiagnosed originally, inasmuch as it was found to be cancerous and (as in the present case) that such condition allegedly existed at the time the original (mis)diagnosis occurred. After the action was commenced in May, 1974 Special Term dismissed it upon motion, holding that the cause of action accrued more than three years earlier when the original diagnosis occurred, in 1969, and that there was no "treatment" since that time. In reversing, the Third Department (46 AD2d, at p 543) held this to be too narrow a view, in that a continuing misdiagnosis is as much "treatment" as an affirmative act of malpractice, and albeit there were gaps of 20 and 32 months, it could not be said as a matter of law that the treatment was not continuous. The court observed (at pp 543-544):

"The problem in this case, then, is not whether there was 'treatment', but whether it was 'continuous', for there was a gap of approximately 20 months between plaintiff's contacts with Nelson and/or Paulsen with regard to the mass in his right flank, and a gap of 32 months between contacts with defendant Oram (cf. *Chartener v. Kice*, 270 F. Supp. 432 [E.D.N.Y.], indicating that under New York law, the Statute of Limitations did not commence to run until the plaintiff's second treatment in March, 1961, when her first treatment had occurred in September, 1960). There is no New York case which supplies an adequate definition of the term 'continuous' as it applies to treatment in a malpractice case, but we feel that one can be extracted by an examination of the rationale underlying *Borgia*. That case was easier in one respect, in that the plaintiff's treatment was indeed completely uninterrupted. He had been admitted to the defendant hospital in October, 1956, and was not discharged until February, 1958. The alleged acts of negligence occurred during this hospitalization, and the Court

of Appeals held that the Statute of Limitations there applicable should not be deemed to have commenced running until the treatment terminated on the date of the patient's discharge. Nobody would reasonably conclude from this that treatment must be on a day-to-day basis, but that does not tell us when we reach the point at which treatment terminates as a matter of law. In *Borgia*, the Court of Appeals explained its adoption of the continuous treatment doctrine by stating that 'it would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital superintendent' (12 NY2d at 156). *The Court of Appeals thus recognized that an individual with a medical complaint who believes that prior treatment or care with relation to that complaint has been inadequate or negligent, cannot seriously be expected to commence a lawsuit when there exists the alternative of seeking corrective treatment. Thus, we feel that a fair interpretation of the rule of Borgia is that, if at the time when the Statute of Limitations would have expired had it run from the last act of malpractice, a patient is still in a relationship of care or treatment with the defendant physician for.the same or related illnesses or injuries, the statute shall not be deemed to have commenced running so long as such treatment continues * * ***

"Since there is at the very least a question of fact on the issue of when plaintiff's treatment lost its continuity * * *, it was error for Special Term to conclude as a matter of law that the Statute of Limitations was a bar to the causes of action." (Emphasis supplied.)

*Davis v City of New York* (38 NY2d 257, *supra*), was decided after *Fonda* (46 AD2d 540, *supra*). In *Davis*, a diagnostic center misdiagnosed a patient's condition on two occasions, once in February, 1968 and again February, 1969. The Court of Appeals held that as a matter of law those acts were discrete and complete so that the services were not continuous as to apply the "continuous treatment" doctrine to toll the statute.

We are of the opinion that there is a question of fact as to whether the "continuous treatment" doctrine is applicable to the case *sub judice*. It cannot be said, on the

facts before us, that as a matter of law, such principle does not apply. The issue must be determined at a plenary trial *(Borgia v City of New York*, 12 NY2d 151, *supra; Fonda v Paulsen, supra). Davis v City of New York (supra)*, upon which Special Term relied, is distinguishable. There, the diagnostic clinic rendered intermittent rather than continuous services to patients. Each visit by plaintiff was separate and discrete. The Court of Appeals concluded accordingly that as a matter of law the "continuous treatment" doctrine does not apply. Such statement cannot be made in the case at bar.

*Imputability to Laboratories:*

In neither *Borgia (supra)* nor *Davis* (38 NY2d 257, *supra)* was there an issue of imputed participation in the malpractice, as in each of those cases the defendant was the only party to render professional services to the plaintiff. However, in *Fonda* (46 AD2d 540, *supra)* the issue of imputability was involved. There, as here, the pathologist misdiagnosed the tissue which formed the basis, at least in part, for the treatment subsequently rendered to the plaintiff by the physicians. The court, after discussing the doctrine of "continuous treatment" and its applicability, proceeded to consider whether that doctrine could be imputed to the pathologist. The court held (at pp 544-545) : "With respect to Dr. Oram, the gap in 'treatments' was longer, but that is at most a circumstance to be weighed in the fact finder's determination of whether he participated in a continuum of treatment. Moreover, we are of the opinion that to hold Oram as having 'treated' plaintiff only at the times of his biopsy diagnoses is to take a view of the case which is analogous to the outworn theories under which privity of contract was required before liability could ensue. The nature of a pathologist's work is such that he rarely, if ever, has a direct physician-patient relationship with an individual—in other words, he never treats patients in the conventional sense—but his work is often the basis upon which the nature of subsequent treatments to be given by the attending physician is determined. Such is what appears to have occurred in the case at bar. In the somewhat unique circumstances presented in the case at bar, where the pathologist should have reasonably expected

that his work would be relied on by other practitioners in determining the mode of treatment, we feel it appropriate to impute to that pathologist or diagnostician constructive participation in that treatment so long as it continued. In this way, the practitioner guilty of the initial malpractice is subject to the same period of limitations as those who continued the malpractice as a reasonably foreseeable result of the initial wrong. Of course, there may have come a point where continuation of a course of treatment was negligent in and of itself irrespective of the original erroneous diagnosis; at that point, the diagnostician's constructive continuance in the treatment would have ceased. But the determination of such a question is one of fact based upon medical evidence which can only be decided by the jury."

We conclude that there is a question of fact as to whether the "continuous treatment" doctrine is imputable to Laboratories. It cannot be said, on the facts presented here, that as a matter of law, such principle is not applicable. The issue must be determined at trial (*Fonda v Paulsen, supra*). *McQuinn v St. Lawrence County Lab* (28 AD2d 1035, *supra*), cited by Special Term, is distinguishable, inasmuch as in *McQuinn* plaintiff was treated by a number of physicians during 13 years between the alleged misdiagnosis by the laboratory and the commencement of the action. The lapse of time between act and suit was inordinate and as a matter of law precluded the applicability of the "continuous treatment" doctrine.

*Applicable Statute of Limitations:*

Finally, we reject the argument accepted by Special Term with respect to all the motions, that the two and one-half year post-1975 malpractice limitation statute would apply to bar these actions even were the statute to be tolled until October, 1976 when plaintiff was allegedly last treated. To allow plaintiff to suffer a shorter limitation period because of a statutory amendment would defeat the purpose of the "continuous treatment" doctrine, a doctrine intended to protect an injured party who forbears suit in reliance upon treatment rendered. To hold otherwise would unfairly cause an injured party to rush to suit to preserve the benefits of that doctrine each time an amend-

ment is anticipated *(Borgia v City of New York, supra,* p 156). Indeed, this argument was specifically rejected in *Frew v Hospital of Albert Einstein Coll. of Medicine Div. of Montefiore Hosp. & Med. Center* (76 AD2d 826), wherein the court held that where the original malpractice occurred prior to the 1975 amendment (CPLR 214-a) and the course of treatment extended beyond 1975, the three-year statute applied (CPLR 214, subd 6). The court stated (p 826): "[T]he act of malpractice complained of occurred in February, 1975. The fact that the 'continuous treatment' theory postponed the accrual of a cause of action until decedent's death on September 5, 1975 (see *Borgia v City of New York,* 12 NY2d 151) does not in our view make CPLR 214-a the applicable statute. The 'continuous treatment' theory merely defers the commencement of the running of the period, but the applicable period is to be determined by when the 'act' of negligence in fact occurred."

We perceive no reason to deviate from the application of this rule.

In conclusion, we hold:

(1) The malpractice action as against Laboratories should not have been dismissed. Order and judgment, Supreme Court, New York County (SHAPIRO, J.), entered on January 25, 1980 and February 7, 1980, respectively, in favor of the defendants Laboratories and dismissing the complaint as to them, should be reversed, on the law, the judgment vacated and the complaint reinstated, without costs.

(2) Said action as against Dr. Torre should not have been dismissed. Order and judgment, Supreme Court, New York County (HELMAN, J.), entered on June 6, 1980 and August 13, 1980, respectively, granting defendant Torre's motion for summary judgment and dismissing the action as against said defendant, should be reversed, on the law, the judgment vacated and the complaint reinstated as to him, without costs.

(3) The breach of contract action as against Laboratories, which was essentially a malpractice suit, is duplicative of the malpractice action as against Laboratories. For that reason, the dismissal of the "contract" action should

remain. Order, Supreme Court, New York County (TYLER, J.), entered on August 1, 1980 as resettled on October 2, 1980, should be affirmed, without costs and without disbursements.

MURPHY, P. J., BLOOM and FEIN, JJ., concur.

Order and judgment, Supreme Court, New York County entered on January 25, 1980 and February 7, 1980, respectively, are unanimously reversed, on the law, the judgment vacated and the complaint reinstated, without costs and without disbursements. The order and judgment, Supreme Court, New York County, entered on June 6, 1980 and August 13, 1980 respectively, are unanimously reversed, on the law, and vacated, and the complaint reinstated as to Dr. Torre, without costs and without disbursements. Order, Supreme Court, New York County, entered on August 1, 1980, as resettled on October 2, 1980, is unanimously affirmed, without costs and without disbursements.