OPINION OF THE COURT
Chief Judge Cooke.
 In an action for medical malpractice arising from a negligent act occurring before July 1, 1975 and where there has been continuous treatment extending beyond that date, the three-year Statute of Limitations applies rather than the shorter period of CPLR 214-a. The continuing treatment by the physician, however, cannot be imputed to an independent laboratory in the absence of an agency or other relevant relationship between the laboratory and doctor or some relevant continuing relation between the laboratory and the patient.
On May 10, 1974, plaintiff consulted defendant Torre, a dermatologist, and requested that he examine a dark mole on her left ankle. Torre excised the mole and submitted a *404 specimen to defendant Central Health Laboratories, Inc. (Laboratories),[1] for a pathology report. About one week later, Torre informed plaintiff that the laboratory report was negative and “therefore nothing further had to be done”.
Plaintiff saw Torre at least eight more times between May 10,1974 and September 13,1976.[2] During that period, plaintiff sought medical attention for various other ailments, but also complained about continued pain and a grayish color in her ankle. Torre re-examined the ankle several times and referred to the earlier biopsy report at least once. On each occasion, and even at plaintiff’s last visit, Torre reassured her that there was no cause for concern.
In May, 1977, plaintiff consulted defendant Ju, a plastic surgeon. He assured her that her ankle was healed and free of disease.[3]
Later developments proved the earlier diagnosis to be wrong. In May, 1978, plaintiff discovered a lump in her groin. She immediately consulted a surgeon, who discovered a malignant melanoma after an operation on May 18. Further surgery in June, 1978 included removing another malignant melanoma from the site where Torre had excised the mole some four years earlier. Plaintiff was required to undergo further, radical surgery and extensive physical therapy. She has a severe limp and other permanent, debilitating injuries.
Plaintiff commenced this suit for medical malpractice in 1979. Torre was served on July 5; Laboratories on August 17. Laboratories successfully moved to dismiss the complaint on the ground that the action was time-barred by *405 the three-year Statute of Limitations (CPLR 214, subd 6).[4] Subsequently, Torre moved for summary judgment on the same basis, and, alternatively, that if continuous treatment were found, then the action was barred by the two- and one-half year limitation of CPLR 214-a. Plaintiff opposed the motion by arguing that continuous treatment had occurred, but that the three-year period was nonetheless applicable. Torre’s motion was granted.
The Appellate Division unanimously reversed (82 AD2d 152). That court held that the continuous treatment doctrine could not be determined on the record as a matter of law and that the three-year Statute of Limitations was applicable. It also ruled that Torre’s continuous treatment could be imputed to Laboratories. Defendants were granted leave to appeal by the Appellate Division on a certified question. The order of the Appellate Division should be modified by dismissing the action as to Laboratories.
Initially, attention must be directed to whether the continuous treatment doctrine is applicable in the present case. Under that rule, the time in which to bring a malpractice action is stayed “when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint” (Borgia v City of New York, 12 NY2d 151, 155). The concern, of course, is whether there has been continuous treatment, and not merely a continuing relation between physician and patient.
As a starting point, continuous treatment does not contemplate circumstances where a patient initiates return visits merely to have his or her condition checked (see id.). The Statute of Limitations may begin to run “once a hospital or physician considers the patient’s treatment to be completed and does not request the patient to return for further examination” (1 Weinstein-Korn-Miller, NY Civ Prac, par 214-a.03, p 2-321; cf. Davis v City of New York, 38 *406 NY2d 257). This is not to say, however, that a complete discharge by a physician forever bars a finding of continuing treatment. Included within the scope of “continuous treatment” is a timely return visit instigated by the patient to complain about and seek treatment for a matter related to the initial treatment. Thus, there will be continuing treatment when a patient, instructed that he or she does not need further attention, soon returns to the doctor because of continued pain in that area for which medical attention was first sought.
Contrary to plaintiff’s position, the continuing nature of a diagnosis does not itself amount to continuous treatment. Fonda v Paulsen (46 AD2d 540), upon which plaintiff relies, does not stand for that proposition. There, a pathologist’s misdiagnosis of a biopsy resulted in the patient’s not receiving treatment, notwithstanding the patient’s repeated complaints of pain. Critical in Fonda was that the patient had returned to the doctor, albeit because of another injury, seeking treatment for tenderness at the spot where the biopsy excision had been made, and did so in a timely manner.
Properly read, Fonda does support plaintiff’s claim of continuous treatment. As in Fonda, plaintiff returned to her doctor for other reasons, but she allegedly requested him also to examine her ankle because of continuing pain. Issues of fact exist on this record as to whether plaintiff’s concern about her ankle was one of the purposes for her subsequent visits. Thus, it cannot be determined at this stage that plaintiff’s relation with Torre did or did not amount to continuous treatment. The existence of these factual questions preclude granting summary judgment at this juncture (see Ugarriza v Schmieder, 46 NY2d 471).
Assuming that continuous treatment did occur in the present case, the appropriate Statute of Limitations must be determined. The initial misdiagnosis occurred in May, 1974, at which time the period for bringing a medical malpractice action was three years (see CPLR 214, subd 6). Effective July 1, 1975, while plaintiff’s treatment was continuing, the period was reduced to two and one-half years (see CPLR 214-a, added L 1975, ch 109, § 6). If section 214-a governs, then plaintiff’s action is time- *407 barred, more than 32 months having elapsed between plaintiff’s last visit and service of summons.
Resolution of this question depends on whether the continuous treatment doctrine delays the action’s accrual or only tolls the running of the Statute of Limitations. If the former, then plaintiff’s action is barred. Although the cases speak of the doctrine in terms of when the action “accrues” (see, e.g., Greene v Greene, 56 NY2d 86, 93-95; Davis v City of New York, 38 NY2d 257, 259, supra; Borgia v City of New York, 12 NY2d 151,155, supra), that term in this context is not strictly accurate. Section 214-a speaks to computing the limitation period in terms of “the act, omission or failure complained of”, not of the entire course of treatment. And, there is a certain illogic in stating that no action is ripe — i.e., it does not “accrue” — until after treatment ends. Continuous treatment has nothing to do with the initial act of negligence. While such treatment itself may be negligent, that would give rise to a different cause of action and would not actually affect the original “act, omission, or failure complained of”. Rather than define the action’s accrual in terms of the doctrine, it is defined in terms of when the original negligent act occurred. Continuous treatment serves simply as a toll — the action may be brought at any time, but the patient will not be compelled to initiate judicial proceedings so long as the physician continues to treat the injury (see Borgia v City of New York, supra).
The action having accrued in 1974, the three-year Statute of Limitations then in effect attached. Torre’s continuing treatment of plaintiff, if any, served to toll the running of the statute, but not to truncate it by imposing the lesser time limit of section 214-a. Thus, whenever treatment of plaintiff is found to have ended, a three-year time period for bringing suit should be imposed.
Finally, it must be determined whether the continuous treatment doctrine can be applied to Laboratories. In essence, this would require imputing Torre’s continuing treatment, if any, to Laboratories, which performed a single, discrete act in May, 1974. Under the circumstances of this case, there is no justification for imputing the continuous treatment.
*408 The policy underlying the continuous treatment doctrine seeks to maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure (see Borgia v City of New York, supra). Implicit in the policy is the recognition that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so.
These considerations do not apply to an independent laboratory. In this context, the inquiry necessarily must be directed to the nature of a laboratory’s relationship to the patient (see McQuinn v St. Lawrence County Lab., 28 AD2d 1035,1036, mot for lv to app den 21 NY2d 644). Generally, a laboratory neither has a continuing or other relevant relationship with the patient nor, as an independent contractor, does it act as an agent for the doctor or otherwise act in relevant association with the physician. A laboratory does not have the opportunity to discover an error in a report. Instead, it must rely on the treating physician to discover any diagnostic mistake. Therefore, the policy underlying the continuous treatment doctrine generally will not apply to the independent laboratory.
Here, the record is devoid of any evidence introduced by plaintiff to justify departing from this general rule. Nothing in the record shows that Laboratories was other than an independent contractor with no continuing relation to plaintiff or that there was any agency relation with Torre. Its misdiagnosis occurred in May, 1974. Under the Statute of Limitations then in effect, suit must have been commenced by May, 1977. Plaintiff did not serve Laboratories until August, 1979. Having been brought too late, her action against Laboratories should be dismissed.
Accordingly, the order of the Appellate Division should be modified, with costs to the corporate defendants against plaintiff and to plaintiff against defendant Torre, in accordance with this opinion and, as so modified, affirmed. The question certified should be answered in the negative.

. The other defendant laboratories — National Health Laboratories, Inc., and National Health Laboratories, Inc. (a Delaware corporation) — are the successors to Central Health Laboratories, Inc. Defendant Revlon Corporation is the parent company of the Delaware corporation. All four entities will be referred to by the single term “Laboratories”.

. Although nothing properly in the record reflects the exact dates of plaintiff’s consultations, this court accepts for the purpose of this appeal that September 13, 1976 was the date of plaintiff’s last visit.

. Ju is not a party to this appeal.

. Plaintiff later commenced a contract action against Laboratories. Special Term dismissed this as being essentially a malpractice action and, hence, time-barred. The Appellate Division affirmed and plaintiff apparently has abandoned the cause before this court.