Jasen, J.
(dissenting in part). While I agree that the action against the defendant Laboratories should be dismissed and that the plaintiff’s action is governed by the *409 three-year Statute of Limitations contained in CPLR 214 (subd 6), I would hold that, upon the circumstances disclosed in this record, the plaintiff is precluded, as a matter of law, from invoking in this malpractice action the doctrine of “continuous treatment” (Borgia v City of New York, 12 NY2d 151). Therefore, as to defendant Torre, I vote to reverse and to dismiss plaintiff’s action as barred by the three-year Statute of Limitations.
According to plaintiff’s affidavit in opposition to the defendants’ motion to dismiss the complaint, plaintiff had been under the care of defendant Torre, a dermatologist, for a variety of skin disorders. On May 10, 1974, Torre removed a d.ark mole from plaintiff’s ankle. One week later, plaintiff was advised by Torre that a pathology report based on a specimen from the mole “was negative, and, therefore nothing further had to be done.” (Emphasis supplied.,)
Over the next two years, plaintiff consulted with Torre on at least eight occasions, the last visit apparently being on September 13, 1976. Although these visits were in connection with other ailments, plaintiff complained to Torre about a grayish color and inflammation in the area where the mole had been removed. On each occasion, Torre, after re-examining the ankle, assured plaintiff that there was no reason to worry.
In May of 1978, plaintiff discovered a lump in her groin that was later determined to be a malignant melanoma. In June of 1978; plaintiff underwent further surgery to remove another malignancy from the area where Torre had removed the mole four years earlier. As a result of yet another operation, plaintiff has been left with a variety of permanent injuries, including a severe limp.
The gist of plaintiff’s action is that defendant Torre misdiagnosed her condition and was negligent in removing the mole from her ankle. Defendant Torre was served with the summons and complaint on July 5, 1979. Because the action was commenced more than five years after the initial misdiagnosis and negligent removal of the mole, plaintiff has invoked the “continuous treatment” doctrine so as to toll the running of the applicable three-year *410 limitations period until September 13,1976, the date of her last visit with defendant Torre.
A majority of this court has concluded that questions of fact exist concerning the applicability of the “continuous treatment” doctrine to this case. In support of this conclusion, the majority states,.without citation of authority, that a “complete discharge” of a patient by a physician does not preclude a finding of “continuous treatment” in situations where the discharged patient, without being requested by the physician to do so, makes “a timely return visit * * * to complain about and seek treatment for a matter related to the initial treatment.” (At p 406.) I cannot agree.
The general rule is that an action for malpractice accrues and the Statute of Limitations begins to run on the date of the alleged act of malpractice. In Borgia v City of New York (12 NY2d 151, supra), this court recognized an exception to this rule in instances where “the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint.” (12 NY2d, supra, at p 155 [emphasis supplied].) In Borgia, however, the court readily acknowledged that the “continuous treatment” doctrine had its limitations. Indeed, “continuous treatment” was carefully defined to mean “treatment for the same or related illness or injuries, continuing after the alleged acts of malpractice, not mere continuity of a general physician-patient relationship.” (12 NY2d, supra, at p 157 [emphasis supplied].) Thus, to invoke the doctrine successfully so as to avoid the otherwise applicable Statute of Limitations, a plaintiff must demonstrate: (1) that “treatment” subsequent to the malpractice was, in fact, rendered; and (2) that there was no disruption in the course of treatment from when the malpractice originally occurred.
The continuity aspect of the doctrine was clarified and, in a sense, amplified in Davis v City of New York (38 NY2d 257). In Davis, the decedent was examined by a city cancer detection center in connection with a lump on her breast on February 26, 1968. Decedent was advised at that time “that there was nothing to be concerned about and to return in two years.” (38 NY2d, supra, at p 259.) A year later, in February of 1969, decedent returned to the center *411 for further examination in response to a mail communication from the center. In December of 1969, after being advised by her family physician to consult a surgeon regarding the condition of her breast, decedent telephoned the center and was told by a receptionist that she would be called back for further examination in February or March of 197Q. Subsequently, a letter was sent by the center scheduling an appointment on February 17, 1970. Decedent underwent a radical mastectomy on January 22, 1970, which disclosed the widespread presence of cancer. A notice of claim was served on the city on April 13,1970. In dismissing the action for failing to file a timely notice of claim, this court determined, as a matter of law, that the decedent was not under the “continuous treatment” of the diagnostic center because the medical services rendered by the center were “intermittent rather than continuous”. (38 NY2d, supra, at p 260.) Specifically, it was held that “the medical services rendered by the center in February, 1968 in legal contemplation were discrete and complete. The same was true of any medical service rendered the following February.” (Id.)
In the present case, it can be assumed that the periodic re-examinations of plaintiff’s ankle undertaken by defendant Torre at plaintiff’s behest in the two years following the alleged malpractice constituted “treatment”.* Nevertheless, plaintiff, as a matter of law, has failed to demonstrate that this treatment was “continuous”. According to her own affidavit, plaintiff was advised by defendant Torre after the removal and testing of the mole that “nothing further had to be done.” Thus, Torre considered plaintiff’s treatment to be complete and he did not request plaintiff to return for further examinations in connection with the ankle. Rather, it was plaintiff’s complaints which caused Torre to re-examine her ankle during subsequent visits to his office in connection with other ailments. However, the initial “treatment”, out of which arose the alleged acts of *412 malpractice, having been completed, these later examinations were no different than was the treatment rendered to the decedent in Davis, to wit: “discrete and complete” services in legal contemplation and, therefore, “intermittent rather than continuous” in nature.
In view of our decision in Davis, the majority’s reliance on Fonda v Paulsen (46 AD2d 540) for purposes of determining whether there has been continuity in treatment is misplaced. Fonda was decided prior to Davis, and the Fonda court itself acknowledged that “[t]here is no New York case which supplies an adequate definition of the term ‘continuous’ as it applies to treatment in a malpractice case”. (46 AD2d, supra, at p 543.) That jurisprudential gap having since been filled by our decision in Davis, Fonda, to the extent that it is to the contrary, is not an accurate statement of the law in this area.
In my view, whether treatment has been “continuous” for purposes of a medical malpractice action should not be determined from the perspective of a discharged patient’s desire to have his physician conduct a re-examination concerning a matter for which treatment already has been completed. (See, e.g., Florio v Cook, 65 AD2d 548, affd 48 NY2d 792.) Rather, whether there has been continuity in treatment should depend upon the medical services actually rendered. (See Davis v City of New York, supra.) Indeed, the policy underlying the “continuous treatment” doctrine is that it would be “absurd” to require a malpractice victim to interrupt ongoing, corrective treatment by commencing a lawsuit against the negligent physician. (Borgia v City of New York, 12 NY2d 151,156, supra.) That policy, however, is not advanced where, as here, the treatment is completed and the patient is specifically informed that “nothing further had to be done.” Once treatment has ended and the patient has been discharged, later complaints about the same ailment should not serve to revive the expired course of treatment and thereby delay further the commencement of the statutorily prescribed limitations period. Statutes of repose such as CPLR 214 seek to finally put to rest stale claims. The view adopted by the majority today will only frustrate that purpose.
*413 Since the plaintiff has failed to demonstrate, by a sufficient evidentiary showing, that the “continuous treatment” exception should be applied, I would dismiss the action against defendant Torre.
Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur with Chief Judge Cooke; Judge Jasen dissents in part and votes to reverse in a separate opinion.
Order modified, etc.

 As to claims for malpractice with respect to acts, omissions and failures occurring after June 30, 1975, CPLR 214-a provides that “the term ‘continuous treatment’ shall not include examinations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient’s condition.” Although not applicable to plaintiff’s action, it is doubtful whether a series of examinations, without more, even constitutes “treatment” under CPLR 214-a.