OPINION OF THE COURT
John A. Monteleone, J.
The defendants, Dr. Alcides C. Pomina, Kingsbrook Jewish Medical Center and Dr. Masazumi Adachi, move for summary judgment to dismiss plaintiffs’ complaint on the ground that it is time barred by the Statute of Limitations.
Plaintiff, Antoinette V. Modzelewski, was first seen by the defendant, Dr. Pomina, a neurosurgeon, on September 15, 1977 at the request of her family doctor, Sorgenti. Subsequently, Dr. Pomina performed a myelogram at Kingsbrook Hospital indicating an extensive intermedullary lesion. Surgery was performed on September 30, 1977. During the course of surgery a biopsy was performed and a specimen was sent to the pathology department.
The defendant, Dr. Adachi, a pathologist and employee of the defendant hospital, reported to Dr. Pomina, after patho *462 logical study that the tumor was anaplastic astrocytoma, a malignant cancerous tumor.
Subsequently, and as a result of such diagnosis by Dr. Adachi, aggressive radiotherapy treatment was rendered to this plaintiff and it is alleged that this cobalt treatment caused her to develop radiation myelopathy and quadraparesis, secondary to the radiation myelopathy.
Thereafter, the pathological slides were sent to Memorial Sloan Kettering Hospital and after examination Dr. B. Horton made a diagnosis of ependynoma, a nonmalignant tumor.
The parties concede that a Statute of Limitations of 2 Vi years applies pursuant to CPLR 214-a. The action was commenced against Dr. Pomina and Kingsbrook Hospital on November 12, 1981 and service was made upon Dr. Adachi on March 30, 1982.
Plaintiffs claim that the Statute of Limitations is tolled by the application of continuous treatment under the doctrine of Borgia v City of New York (12 NY2d 151) and Fonda v Paulsen (46 AD2d 540).
It is undisputed that Dr. Pomina treated the plaintiff, Mrs. Modzelewski as an attending physician and performed surgery upon a tumor adhering to her spinal cord. She was regularly seen by Dr. Pomina during her hospitalization until she was discharged on December 10, 1977. Following surgery Dr. Pomina prescribed Decadron, a steroid medication. On May 5, 1978, pursuant to a telephone call made by the husband complaining that his wife had swelling in parts of her body, Dr. Pomina reduced her Decadron intake. On July 3, 1979, plaintiff wife was admitted to Interboro Hospital and Dr. Pomina was requested to examine her at the request of Dr. Sorgenti. Dr. Pomina’s impression was "spastic quadraplegia” and "possible regrowth of tumor”. Medications were ordered as well as physical therapy. On January 19, 1980, Dr. Pomina examined this plaintiff and found "marked spasticity of all extremities, elevated deep tendon reflexes and bilateral babinski signs.” His impression was "spinal cord tumor” and advised a CAT scan which was performed by a Dr. Norman Dinhofer who sent his findings to Dr. Pomina.
Dr. Pomina’s last examination of Mrs. Modzelewski was on September 28, 1980. His findings were that she was quadraplegic evidencing neurological signs indicating a spinal cord tumor. Dr. Pomina suggested that she be placed on Lioresal to relieve the spasms.
*463 It is apparent that the treatment rendered by Dr. Pomina is related to the same original condition. The longest gap of one year and two months is well within the Statute of Limitations and this treatment rendered by Dr. Pomina was continuous and comes within the Borgia rule.
The defendants, Kingsbrook Hospital and Dr. Adachi, contend that the misdiagnosis by Dr. Adachi, as alleged, should not be the basis of tolling the statute pursuant to the theory of continuous treatment.
The plaintiffs rely upon Fonda v Paulsen (supra). The defendants, Kingsbrook Hospital and Dr. Adachi, contend that Fonda was overruled by McDermott v Torre (56 NY2d 399).
In Fonda (supra), a biopsy was performed on plaintiff’s right buttock and pelvic area in May 1969 by Dr. Nelson. The slides were read by a pathologist, Dr. Oram, who concluded that the mass from which the excision had been taken was noncancerous. Dr. Paulsen practiced in association with Dr. Nelson and treated the plaintiff on January 20, February 10, March 3 and April 14, all of 1970. Although these visits related primarily to injuries sustained in an accident occurring in January 1970, plaintiff in the February visit complained of discomfort in the right buttock and "examination revealed a 4 cm, in diameter deep-seated mass in the buttock which was tender” and that, as of the April visit plaintiff had "persistent tenderness over the right pelvis” (46 AD2d 540, 542, supra). In January 1972, plaintiff was referred by Nelson and/or Paulsen to Dr. Voss who performed a second biopsy. Dr. Oram participated in this pathological study which concluded that plaintiff suffered from a malignancy which had existed since 1969.
In applying the Borgia rule relating to continuous treatment to the pathologist, the court in Fonda (supra) held that where it is foreseeable to a pathologist that his findings will be relied upon in determining the mode of treatment, then constructive participation is imputed to the pathologist in that treatment so long as it continued. In unequivocal language the court stated, "In this way, the practitioner guilty of the initial malpractice is subject to the same period of limitations as those who continued the malpractice as a reasonably foreseeable result of the initial wrong” (46 AD2d 540, 545, supra).
In McDermott v Torre (supra) the defendant dermatologist on May 10, 1974, excised a mole in her left ankle and submitted a specimen to a laboratory for a pathology report. A negative finding was made and plaintiff was told that nothing *464 further had to be done. Plaintiff saw the defendant at least eight more times until September 13, 1976 seeking medical attention for various other ailments but also complaining of continued pain in this ankle accompanied by a grayish color. In June 1978, a malignant melanoma was removed from the site where Torre excised the mole. Suit was commenced against Torre on July 5, 1979 and against the laboratory on August 17, 1979.
Applying the three-year Statute of Limitations, which was applicable at this time, the court denied summary judgment as to Torre on the ground that factual questions existed. However, it granted summary judgment as to the laboratory.
In discussing the policy underlying the continuous treatment doctrine as set forth in Borgia v City of New York (supra), the court stated, "Implicit in the policy is the recognition that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so.” (McDermott v Torre, 56 NY2d 399, 408, supra.) In discussing the ordinary role of an independent laboratory the court also stated that generally a laboratory does not have a continuing or relevant relationship with the patient nor does it act as an agent for the doctor or otherwise act in relevant association with the physician. The court noted that a laboratory has no opportunity to discover any diagnostic mistake and must rely on the treating physician to discover any diagnostic mistake.
In dismissing the complaint in McDermott v Torre (supra, p 408), the court specifically stated, "Here, the record is devoid of any evidence introduced by plaintiff to justify departing from this general rule.”
This court disagrees with the position of Dr. Adachi and Kingsbrook, that the continuous treatment by Dr. Pomina cannot be imputed to them. The Court of Appeals in McDermott v Torre (supra) did not override the principles enunciated in Fonda v Paulsen (46 AD2d 540, supra).
The case at bar is clearly distinguishable from Torre (supra). Dr. Pomina and Dr. Adachi were acting as a medical team during the operation. Dr. Pomina excised a specimen of the tumor for biopsy and awaited the pathological findings by Dr. Adachi before continuing with his neurosurgery. A surgeon’s operative approach for removal of a tumor depends upon whether it is malignant or not. The same is true with respect to the application of radiation treatments thereafter.
Dr. Pomina relied upon the pathological finding that the tumor in question was an anaplastic astrocytoma.
*465 The acts of the neurosurgeon and the pathologist were interwoven and in relevant association in the treatment of Mrs. Modzelewski. Dr. Pomina had no opportunity to discover any diagnostic mistake. Dr. Adachi, unlike the independent laboratory in Torre (supra), knew that he could not rely on the surgeon to discover or correct a misdiagnosis.
Under the circumstances of this case, this court concludes that the policy set forth in Fonda (supra) applies since Dr. Adachi knew that his findings would be relied upon in determining the mode of treatment. Accordingly, the continuous treatment by Dr. Pomina is imputed to him.
Therefore, the motions of the defendants are denied since at the very least questions of fact exist precluding dismissal of the complaint.