OPINION OF THE COURT
Ira Gammerman, J.
Defendants Stanley Craig and Bob Greenwald move pursuant to CPLR 3212 for summary judgment dismissing the complaint as against them. Third-party plaintiffs, Richard E. Winter, William S. Wanago, individually, and Richard E. Winter, William S. Wanago, doing business as Executive Health Examiners, Inc., cross-move to amend the third-party complaint to include a cause of action for wrongful death. This is an action to recover for the personal injuries and the subsequent death of Bernice Sherry allegedly as a result of the negligent failure to diagnose lung cancer.
FACTUAL BACKGROUND:
From 1979 through 1984, Bernice Sherry was a patient of the Wall Street clinic of the Executive Health Examiners, Inc. (the clinic). During the period from 1979 to 1983, chest X rays were taken of Ms. Sherry by the clinic and were interpreted as normal by the clinic’s radiologists, Dr. Stanley Craig and Dr. Bob Greenwald. The two doctors were apparently independent contractors retained on a continuing basis by the clinic. The nature of the relationship between the clinic and the doctor is not relevant to the issues raised on this motion inasmuch as the decedent consulted the clinic, not the doctors, and the clinic would be vicariously liable for injuries caused by their negligence. (Mduba v Benedictine Hosp., 52 AD2d 450 [3d Dept 1976].) Dr. Craig retired on July 5, 1983 and thus the X rays taken on August 26, 1983 and August 23, 1984 were read by Dr. Greenwald. X rays taken on the latter date were interpreted as indicating the possibility of low-grade neoplastic process. Ms. Sherry then sought other medical treatment.
Ms. Sherry commenced suit for personal injuries against the clinic on April 15, 1985. The action against this clinic is based solely on its vicarious liability for the alleged negligence of the two doctors. Dr. Craig was impleaded as a third-party *505 defendant on November 7, 1986. Ms. Sherry died on January 14, 1987, her executor was substituted as plaintiff and the complaint amended to include an action for wrongful death. On November 10, 1988, plaintiff commenced an action against Dr. Greenwald for conscious pain and suffering. On December 9, 1988, plaintiff instituted a separate action against Dr. Craig and the complaint against defendant Greenwald was amended to include wrongful death.
discussion:
The principal issue with respect to the action asserted against Dr. Craig is whether constructive participation in the treatment of Ms. Sherry can be imputed to the radiologist, since he reasonably could have expected the treating physician to render a diagnosis based on his findings.
Dr. Craig argues that he could not possibly have participated in Ms. Sherry’s treatment beyond his date of retirement, July 5, 1983, and therefore, the 2Vi-year Statute of Limitations would have run on January 5, 1986, before service of the summons and complaint on him. Dr. Craig further claims that, assuming constructive participation is found until August 26, 1983, the date the last X ray was allegedly misread, the 21A-year Statute of Limitations period running from that date would expire February 26, 1986, again prior to the service of the summons and complaint upon him. Therefore, he maintains, the action for conscious pain and suffering is untimely and should be dismissed as against him.
Concerning the second cause of action, the Statute of Limitations for wrongful death is two years. (EPTL 5-4.1.) If the alleged wrongful death was preceded by an actionable period of conscious pain and suffering, such conscious pain and suffering action must be still viable on the date of decedent’s death. (EPTL 5-4.1.) Defendant Craig argues that since Ms. Sherry died on January 14, 1987, and had not instituted suit prior to the running of the Statute of Limitations (either Jan. or Feb. 1986), she had no viable cause of action against him on the date of her death. Therefore, he maintains, the claim for wrongful death as against him should be dismissed as well.
Conversely, plaintiff contends that the 2Vi-year Statute of Limitations on the action for conscious pain and suffering commenced upon the last date of Ms. Sherry’s treatment at the clinic, August 23, 1984, since the treating physician at the clinic, in his yearly evaluation of Ms. Sherry, relied upon the *506 prior X-ray readings given by Drs. Craig and Greenwald. Therefore, until August 23, 1984, the treating physician rendered a diagnosis based upon X-ray readings which were reported as "normal” when Ms. Sherry allegedly had a slowly growing lesion.
Plaintiff asserts that since the clinic relied upon the X-ray readings of Dr. Craig until August 23, 1984, the continuous treatment rendered by the clinic to Ms. Sherry until that date is imputed to defendant Craig by virtue of the doctrine of constructive participation. (See, Borgia v City of New York, 12 NY2d 151 [1962]; Fonda v Paulsen, 46 AD2d 540 [3d Dept 1975]; Evra v Hillcrest Gen. Hosp., 111 AD2d 740 [2d Dept 1985.)
Fonda (supra), a case which involved a pathologist’s misdiagnosis of a biopsy, held that (at 545): "[t]he nature of a pathologist’s work is such that he rarely, if ever, has a direct physician-patient relationship with an individual — in other words, he never treats patients in the conventional sense — but his work is often the basis upon which the nature of subsequent treatments to be given by the attending physician is determined. * * * [W]here the pathologist should have reasonably expected that his work would be relied on by other practitioners in determining the mode of treatment * * * [it is] appropriate to impute to that pathologist or diagnostician constructive participation in that treatment so long as it continued. In this way, the practitioner guilty of the initial malpractice is subject to the same period of limitations as those who continued the malpractice as the reasonably foreseeable result of the initial wrong.”
In recent cases, however, the Court of Appeals has restricted the holding in Fonda (supra) to those instances where the defendant has a continuing or other relevant relationship with the patient or, acts as agent for a doctor or otherwise acts in relevant association with the physician. (See, Meath v Mishrick, 68 NY2d 992 [1986]; McDermott v Torre, 56 NY2d 399 [1982].) In the instant case however, Dr. Craig certainly had a relevant association with the clinic, and as such, this case does not fall within the restrictions of Meath and McDermott.
Using the last date of Ms. Sherry’s treatment at the defendant clinic, August 23, 1984, the Statute of Limitations on the action for conscious pain and suffering ran on February 23, 1987. Therefore, as the date of Ms. Sherry’s death, January *507 14, 1987, the decedent still had a viable cause of action for pain and suffering. Pursuant to CPLR 210 (a), the Statute of Limitations, with respect to the claim for conscious pain suffering for a person who dies with a viable cause of action, is extended to one year from the date of death or, in this case, January 14, 1988.
Plaintiffs medical malpractice claim against defendant Craig was commenced December 9, 1988 after the limitations period had expired. Relying upon the relation back theory in Duffy v Horton Mem. Hosp. (66 NY2d 473 [1985]), plaintiff asserts that the action can be deemed to have been interposed at the time the third-party action was commenced, November 7, 1986. Duffy concerned a plaintiff who amended a complaint to name a third-party defendant as a defendant. The third-party defendant claimed plaintiffs action was untimely. The Duffy court found that since the third-party defendant had full notice of the transactions and occurrences which were the basis of the claims in the case, upon service of the papers by the defendant in the third-party action, the medical malpractice claim by plaintiff "related back” to the date of the institution of that action and that the action commenced against the third-party defendant by the plaintiff was timely.
Here, the plaintiff did not seek to amend the complaint to sue the third-party defendant doctor, but instead instituted a separate action. However, the notice requirement of Duffy (supra) has been met by virtue of the institution of the third-party action against defendant Craig and therefore, plaintiffs claim against him is timely.
Since Ms. Sherry died with a viable claim for conscious pain and suffering her estate can commence a wrongful death action within two years of her date of death, or January 14, 1989. (EPTL 5-4.1.) The action commenced against defendant Craig for wrongful death on December 9, 1988 is therefore timely.
Accordingly, the motion for summary judgment by defendant Craig is denied.
The principal issue with respect to the action asserted against Dr. Greenwald is whether timely service upon the clinic which is united in interest with defendant Greenwald prevents him from successfully asserting a Statute of Limitations defense.
Defendant Greenwald argues that since his last treatment of Ms. Sherry occurred on August 23, 1984, and Ms. Sherry *508 died with a viable cause of action, the Statute of Limitations for the action for conscious pain and suffering expired January 14, 1988. As plaintiff did not serve defendant Greenwald until November 10, 1988, it is contended that the action was not timely.
It is plaintiff’s position that defendant Greenwald was put on constructive notice of the claims against him when the clinic was served on April 15, 1985. Because of the nature of the relationship between defendant Greenwald and the defendant clinic, the clinic is vicariously liable for his alleged negligence. Thus, he is united in interest with the clinic.
Codefendants can be considered united in interest when one defendant is responsible for the acts or omissions of the other. (McLaughlin, 1987 Supp Practice Commentaries, McKinney’s Cons Law of NY, Book 7B, CPLR C203:3, 1989 Pocket Part, at 61; see also, Zeitler v City of Rochester, 32 AD2d 728 [4th Dept 1969].)
In Raschel v Rish (69 NY2d 694, 697 [1986]), a case that involved the question of unity of interest between a doctor and a hospital, the court held that: "[generally, in malpractice and negligence actions, defendants will be considered united in interest, rather than joint tort-feasors, when one is vicariously liable for the acts of the other (see, Connell v Hayden, 83 AD2d 30; see also, 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 203.06). For a hospital to be vicariously liable for the negligence of a physician, ordinarily an employment relationship * * * is required.”
The question arises as to whether there is indeed unity of interest between the clinic and Dr. Greenwald since the clinic may be held vicariously liable if Dr. Craig only was found negligent and Dr. Greenwald exonerated, a situation where the clinic and Dr. Greenwald would fail to stand or fall together. The court in Connell v Hayden (supra) held that where a plaintiff sues a hospital and two employee doctors, both physicians can be considered united in interest with the hospital. The court found that each doctor and the hospital did in fact stand or fall together because if the doctor was exonerated, the hospital could not be held vicariously liable for his negligence. Therefore the defenses of the hospital and that doctor are the same even though the defenses might differ with respect to each physician.
Since the defendant clinic is united in interest with Dr. Greenwald, he was timely served with respect to the claim for conscious pain and suffering.
*509 Defendant Greenwald also claims that plaintiff withdrew the wrongful death claim. However, plaintiff merely withdrew claims as to loss of inheritance by the next of kin.
Since the Statute of Limitations for the wrongful death claim expired January 14, 1989, the action commenced on December 9, 1988 is timely. Accordingly, the motion for summary judgment by defendant Greenwald is denied.
The cross motion to amend the third-party complaint is granted and that complaint is deemed amended to include a claim for wrongful death.