■ JONATHAN MEATH et al., Respondents, v ABDULLAH H. MISHRICK et al., Appellants.—Order, Supreme Court, New York County (Leonard N. Cohen, J.), entered January 17, 1985, denying defendants' motion for summary judgment, modified, on the law, the motion granted to the extent of dismissing the complaint against defendants Tagliamonti and St. Francis Hospital, and, except as thus modified, affirmed, without costs or disbursements.

While we agree with Special Term that a question of fact exists concerning the applicability of the continuous treatment doctrine with respect to Dr. Mishrick, none exists as to Dr. Tagliamonti and his employer, St. Francis Hospital. Accordingly, we dismiss the complaint against them.

Plaintiff's decedent visited defendant Dr. Mishrick on December 30, 1976 and, on that occasion, Dr. Mishrick found a

suspicious mole behind her left ear. He excised it surgically on January 28, 1977 at St. Francis Hospital and submitted the excised tissue to the hospital's pathology department, where it was examined by Dr. Tagliamonti, a pathologist employed by St. Francis. Dr. Tagliamonti reported "[n]o malignant cells are identified in the sections examined", and he concluded that the tissue was a "compound nevus". Dr. Tagliamonti did not have any contact with the decedent thereafter.

Dr. Mishrick attended the decedent postoperatively until April 7, 1977, and allegedly once a year thereafter, although in his affidavit in support of his motion for summary judgment Dr. Mishrick stated that he did not see decedent between April 7, 1977 and March 11, 1980. On April 18, 1980 Dr. Mishrick surgically removed a suspected basal cell carcinoma from the decedent's left shoulder, and on December 1, 1982 she was admitted to Nassau Hospital for evaluation of a rapidly growing mass of cells on the left side of her neck. A biopsy of the neck lesion revealed a malignant melanoma.

Decedent then went to the Sloan Kettering Institute for a further examination. A doctor at the Institute reviewed the original slide read by Dr. Tagliamonti and stated that it contained a "[m]alignant melanoma measuring 1.5 mm thick." He also noted, "This young lady had what was thought to be a benign nevus biopsied about six years ago and subsequent review revealed it to be level 4, 1.5 mm melanoma."

A summons and complaint alleging malpractice and negligence was served upon Dr. Tagliamonti on April 9, 1983, on St. Francis Hospital on April 21, 1983 and upon Dr. Mishrick on April 22, 1983. All three defendants interposed the affirmative defense of the 2½-year Statute of Limitations provided in CPLR 214-a, on the basis of which they subsequently moved for summary judgment. Special Term granted dismissal of the claims against the hospital relating to its alleged 1977 acts of negligence, but denied the hospital's motion as to the malpractice claims as well as the cross motions of Drs. Tagliamonti and Mishrick, without prejudice to renewal following completion of discovery. The court found factual issues as to the purpose of the decedent's March 1981 visit to Dr. Mishrick, and as to whether any alleged continuing treatment by Dr. Mishrick could be imputed to either the hospital or Dr. Tagliamonti.

To find that the action against Dr. Tagliamonti is not time barred requires imputing Dr. Mishrick's continuing treatment, if any, to Dr. Tagliamonti, who performed a single, distinct act

on January 28, 1977. Although plaintiff notes that Dr. Mishrick relied upon the alleged misdiagnosis in his continued treatment of the decedent, the record is barren of any facts suggestive of a relationship between the decedent and Dr. Tagliamonti after January 28, 1977, or of any agency relationship between Dr. Tagliamonti and Dr. Mishrick before or after that date.

"The policy underlying the continuous treatment doctrine seeks to maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure [citation omitted]. Implicit in the policy is the recognition that the doctor not only is in a position to identify and correct his or her malpractice, but is best placed to do so." *(McDermott v Torre,* 56 NY2d 399, 408.) As was also noted in *McDermott,* these considerations cannot apply to an independent pathologist. "A [pathologist] does not have the opportunity to discover an error in a report. Instead [he] must rely on the treating physician to discover any diagnostic mistake. Therefore, the policy underlying the continuous treatment doctrine generally will not apply to the independent [pathologist]." *(McDermott v Torre, supra,* at p 408.)

Thus, the nature of the relationship between the pathologist and the patient must be reviewed. There is no evidence here that Dr. Tagliamonti either had a continuing relationship with the decedent or acted in an agency relationship with the treating physician, Dr. Mishrick. Since no evidence of this nature has been advanced to toll the running of the Statute of Limitations against Dr. Tagliamonti, summary judgment should have been granted in his favor.

"The opponent of a properly made summary judgment motion must present evidentiary facts sufficient to raise a triable issue of fact [citations omitted]." *(Freedman v Chemical Constr. Corp.,* 43 NY2d 260, 264.) " 'A mere chance that somehow, somewhere, on cross examination or otherwise plaintiffs will uncover something which might add to their case but obviously of which now they have no knowledge, is mere speculation and conjecture and is not sufficient' " *(Trails W. v Wolff,* 32 NY2d 207, 221, quoting *Hurley v Northwest Pub.,* 273 F Supp 967, 974, *affd* 398 F2d 346). "Hope alone will not raise a triable issue." *(Bachrach v Farbenfabriken Bayer,* 36 NY2d 696, 697.)

Taken in the light most favorable to plaintiff, all that the record indicates is that Dr. Tagliamonti made a diagnosis in 1977, had nothing further to do with the decedent's treatment

or evaluation, and never had any professional relationship with Dr. Mishrick other than as an independent contractor. Dr. Tagliamonti's affidavit makes it clear that his only contact with the decedent was in examining the tissue submitted to him in January 1977. In opposition, plaintiff can only argue that an issue is presented as to Dr. Tagliamonti's "constructive participation" in Dr. Mishrick's treatment of the decedent. This cannot suffice to defeat the motion. Inasmuch as Dr. Tagliamonti was not served until almost six years after his sole contact with the decedent, the action is time barred.

The dissent argues that summary judgment should be withheld against Dr. Tagliamonti and St. Francis Hospital so that discovery may be pursued. Yet, plaintiff has not offered anything more than surmise to connect Dr. Tagliamonti in a continuous relationship to Dr. Mishrick. "[A] recitation of bare allegations and speculation as to what discovery might reveal" does not warrant a denial of summary judgment. *(Federal Deposit Ins. Corp. v Schwartz,* 55 NY2d 702, 703-704.)

Since Dr. Tagliamonti's employment at St. Francis Hospital provides the only basis for the imposition of liability upon the hospital, summary judgment should also have been granted in its favor. Concur—Kupferman, J. P., Sullivan and Carro, JJ.

Fein and Rosenberger, JJ., dissent in a memorandum by Fein, J., as follows: I respectfully dissent for the reasons stated by Justice Leonard N. Cohen, and would merely add the following. As Justice Cohen stated in his careful opinion, "The continuing treatment of a physician may be imputed to a laboratory and thus presumably to its pathologists and to the hospital which employs the pathologists, so long as there is an agency relationship with the patient's doctor or other relevant relationship such as reliance on the laboratory by the patient's doctor (See *McDermott v. Torre,* 56 NY2d 399; *Fonda v. Paulsen,* 46 AD2d 540 [3rd Dept. 1975]). The only facts revealed in these papers [are] that Dr. Mishrick apparently had admitting and operating privileges at the Hospital. But full discovery has not been had as to such issues. Thus, summary judgment of the malpractice claims on the ground of the expiration of the statute of limitations is inappropriate and premature at this juncture." Accordingly, Special Term denied summary judgment, without prejudice to renewal following completion of discovery. We should follow that determination.

As the majority indicates, we are all agreed that an issue of fact exists concerning the applicability of the continuous

treatment doctrine with respect to Dr. Mishrick. However, plaintiff must be afforded an opportunity by full discovery, presently stayed by the motions for summary judgment (CPLR 3214 [b]), to ascertain the relationship among Dr. Mishrick, the hospital, and Dr. Tagliamonti, the pathologist employed by the hospital.

It is undisputed that Dr. Tagliamonti reported that "[n]o malignant cells are identified in the sections examined." He concluded that the tissue was a "compound nevus". It is equally undisputed that some four years later, the original tissue slide read by Dr. Tagliamonti was examined by a doctor at Sloan Kettering who reported that it contained a "[m]alignant melanoma measuring 1.5 mm thick." This doctor further noted: "This young lady had what was thought to be benign nevus biopsied about 6 years ago and subsequent review has revealed it to be a level 4, 1.5 mm melanoma."

It is thus plain that a cause of action for malpractice is stated against Dr. Tagliamonti and St. Francis Hospital, which employed him. The only bar is the Statute of Limitations, which could be overcome, as the majority concedes, if Dr. Mishrick's continuing treatment, if any, can be imputed to Dr. Tagliamonti and the hospital.

The majority concludes that the record is "barren of any facts suggestive of a relationship between the decedent and Dr. Tagliamonti after January 28, 1977, or of any agency relationship between Dr. Tagliamonti and Dr. Mishrick before or after that date." To the extent that the record is barren of facts concerning these relationships, it is because of the absence of discovery, precluded by the motions for summary judgment. To grant summary judgment now is to bar the door against discovery of the facts.

Summary judgment is the equivalent of a trial. It effectively "deprives a party of his day in court" (Ugarriza v Schmieder, 46 NY2d 471, 474). It is only to be employed where it is plain that there are no issues of fact. The function of summary judgment is issue finding, not issue determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395; Robinson v Strong Mem. Hosp., 98 AD2d 976; Renda v Frazer, 75 AD2d 490). The facts can only be determined through discovery, which has not yet taken place. (Winegrad v New York Univ. Med. Center, 64 NY2d 851, on remittitur 111 AD2d 138.)

Despite the apparent finding to the contrary by the majority, it is clear that at the time of the biopsy in 1977, Dr. Mishrick had privileges at St. Francis Hospital. He conducted

his examination of the patient there and performed the first operation there. Dr. Tagliamonti did the examination of the tissue slide there. Thus, at least at that time, there is evidence of a relationship among the two doctors and the hospital. How long that relationship continued is the question at issue, which discovery may reveal. It appears that Dr. Mishrick is still on the attending staff at that hospital. Dr. Tagliamonti's carefully drawn affidavit states that he is still employed as a pathologist at the hospital. Although he denies that he ever treated plaintiff or had any personal contact with her, he admits to having examined the tissues. However, he says nothing about any contact with Dr. Mishrick, then or at any other time. On this issue Dr. Mishrick's affidavit is equally uninformative.

By granting summary judgment to the doctor and the hospital, the majority has determined the issue against the plaintiff without an opportunity to discover the facts (*City Univ. v Finalco, Inc.*, 93 AD2d 792). Their reliance on *McDermott v Torre (supra)* assumes a fact not yet determined in this action. As was stated in *McDermott* (56 NY2d, at p 403), "The continuing treatment by the physician, however, cannot be imputed to an independent laboratory in the absence of an agency or other relevant relationship between the laboratory and doctor or some relevant continuing relation between the laboratory and the patient." In that case it was undisputed that the diagnosis was made by an independent laboratory.

It is doubtful that we are dealing here with an independent laboratory, as in *McDermott (supra)*, but rather with a hospital and its pathology department, as appears to have been the case in *Fonda v Paulsen (supra)*, where evidence of a continuing relationship was found. It also appears that the original tissue specimens were maintained within the hospital and not furnished to Dr. Mishrick, who might have recognized the error in diagnosis. Hence, the very rationale of *McDermott* suggests that further discovery is required. If, indeed, the test is an opportunity to discover errors, it was the hospital and the pathologist who had that opportunity since the specimens were accessible to them. Whether there was consultation between the two doctors does not appear. Neither denies that there was consultation. Plaintiff would not know whether it occurred.

The issue of Dr. Tagliamonti's and St. Francis Hospital's "constructive participation" in Dr. Mishrick's treatment of plaintiff should not be determined on this barren record. There is sufficient evidence in the record at this point that Dr.

Mishrick relied upon Dr. Tagliamonti's alleged misdiagnosis by reason of which the patient was not treated for her cancer for four years *(see, Fonda v Paulsen, supra)*. Dr. Mishrick allegedly had frequently reassured the recently deceased plaintiff that the tissue removed in 1977 was nonmalignant. Whether this reassurance was premised upon the original report or whether there was a continuing consultation does not appear. These issues can be explored by the discovery which is presently foreclosed by the motion for summary judgment (CPLR 3214 [b]).

Only the doctors have the evidence which is now wanting. Faulting plaintiff for failing to furnish such information, the majority has now locked the courthouse door against her proper efforts to obtain it by discovery. This is not the function of summary judgment.

We should not rush to judgment. There will be time enough for an appropriate motion for summary judgment after discovery, if facts are developed in accordance with the majority's premature findings.