■ ARMANDO DE PERALTA et al., Respondents-Appellants, v PRESBYTERIAN HOSPITAL et al., Respondents, and EDGAR M. HOUSEPIAN, Appellant.—Order, Supreme Court, New York County (Burton S. Sherman, J.), entered July 24, 1985, which granted appellant Dr. Housepian's motion and the cross motion by defendant the Presbyterian Hospital, Columbia Presbyterian Medical Center, Neurological Institute (Presbyterian) for reargument and renewal and, on reargument, recalled its prior order entered February 1, 1985, denied Dr. Housepian's motion for summary judgment dismissing the complaint as barred by Statute of Limitations and granted Presbyterian's cross motion for such relief, unanimously modified, on the law, to grant Dr. Housepian's motion for summary judgment dis-

missing the complaint, and otherwise affirmed, without costs or disbursements.

This medical malpractice action was commenced to recover for injuries sustained as a result of Dr. Housepian's alleged negligence in performing spinal surgery on Mr. De Peralta on May 25, 1978. De Peralta had been referred to Dr. Housepian by his family physician, Dr. Stock, with a long history of neurological problems, which required the use of braces and a cane. After a physical examination, Dr. Housepian opined that a decompression was necessary to separate the scar tissue which compressed the nerves in plaintiff's legs. After securing another opinion, plaintiff consented to submit to a decompressive laminectomy, which was performed at Presbyterian on May 25, 1978.

Following the surgery and while still confined, Dr. Housepian referred plaintiff for physical therapy to Dr. Downey, the hospital's chief of rehabilitation medicine. Therapy was supervised by Dr. Downey during plaintiff's hospitalization and this continued, on an outpatient basis after his discharge on June 24, 1978, until August 1979. After the hospital discharge, there were two postoperative visits with Dr. Housepian on July 31, and November 29, 1978 and no further examinations by Dr. Housepian after the latter date.

In June 1979, when plaintiff was still undergoing physical therapy, he submitted insurance forms to Dr. Housepian and complained about his limited progress. On June 27, 1979, Dr Housepian wrote to plaintiff, expressing his sorrow that there had been limited improvement and stating that, in view of the long interval after the surgery, it would be "unrealistic to think of any further meaningful improvement." However, appellant did suggest that "before even making such pronouncements I should see you once more as it has been over a year since your surgery and will look forward to seeing you in the office if you can make an appointment." It is conceded that Mr. De Peralta did not make an appointment and had no further contact with Dr. Housepian.

This action was commenced by service of a summons with notice on Presbyterian on May 5, 1981 and on Dr. Housepian on June 4, 1981. Appellant's answer included an affirmative defense of Statute of Limitations. In September 1984, more than three years after the action was commenced, Dr. Housepian moved and Presbyterian cross-moved for summary judgment dismissing the complaint as barred by Statute of Limitations. Special Term denied both motions, finding that there were factual issues as to the applicability of the 2½-year

limitations period in CPLR 214-a. In doing so, it held that the therapy rendered by Dr. Downey could not be imputed to Dr. Housepian to extend the limitations period under the continuous treatment doctrine. Further, it found that there were factual issues as to whether Dr. Housepian and Presbyterian were united in interest, observing that Dr. Housepian's medical reports and bill were on hospital stationery.

On reargument and renewal, the court recalled its prior order and granted Presbyterian's motion to dismiss, holding that the hospital was not responsible for the acts of Drs. Housepian and Downey, since both had treated plaintiff as private, attending physicians. However, it denied Dr. Housepian's motion for the same relief, noting that plaintiff had received therapy from Dr. Downey at Dr. Housepian's suggestion and holding that the Statute of Limitations had been tolled until August 1979, when plaintiff's therapy sessions ceased. Alternatively, it concluded that the earliest date that the limitations period would expire was 2½ years after Housepian's letter of June 27, 1979 and, therefore, the action was timely. We disagree.

On this record, it is clear that the action as against Dr. Housepian is barred by the 2½-year Statute of Limitations (CPLR 214-a). A cause of action for medical malpractice accrues on the date the act, omission or failure to act occurs, with two exceptions, namely, where there is a "continuous treatment" related to the original condition or complaint (CPLR 214-a; *Borgia v City of New York,* 12 NY2d 151) or where the malpractice consists of the defendant leaving a "foreign object" in the body (CPLR 214-a; *Flanagan v Mount Eden Gen. Hosp.,* 24 NY2d 427). The applicability of the continuous treatment doctrine requires that "there has been continuous treatment, and not merely a continuing relationship between physician and patient." *(McDermott v Torre,* 56 NY2d 399, 405.) The underlying rationale is the existence of a " 'continuing trust and confidence' " which warrants tolling the limitations period *(Richardson v Orentreich,* 64 NY2d 896, 898; *Coyne v Bersani,* 61 NY2d 939, *affg* 94 AD2d 961).

In *Richardson v Orentreich (supra,* at p 898), the Court of Appeals recognized that, in terms of the accrual of a cause of action for medical malpractice, treatment would not necessarily terminate on the patient's last visit with the physician *(see also, McDermott v Torre, supra,* at p 406). In *Richardson,* the plaintiff received periodic treatments for one year and 10 months, until October 8, 1974, at which time she was given another appointment two months later, which she never kept.

Although plaintiff had no further contact with the physician, the continuous treatment principle was applied to toll the statute to the date of the final, canceled appointment: "The 'continuing trust and confidence' which underlies the 'continuous treatment doctrine' *(Coyne v Bersani,* 61 NY2d 939, 940) does not necessarily come to an end upon a patient's last personal visit with his or her physician *(see, McDermott v Torre,* 56 NY2d 399, 406), *when further treatment is explicitly anticipated by both physician and patient as manifested in the form of a regularly scheduled appointment for the near future,* agreed upon during the last visit, in conformance with the periodic appointments which characterized the treatment in the immediate past [citing case]. Thus, a patient remains under the 'continuous treatment or care' of a physician between the time of the last visit and the next scheduled one where the latter's purpose is to administer ongoing corrective efforts for the same or a related condition." *(Supra,* at pp 898-899 [emphasis added].)

In our case, unlike the situation in *Richardson (supra),* there was no scheduled appointment for any future visit and no further treatment was anticipated, either by plaintiff or defendant. De Peralta's last appointment was in November 1978, seven months before the June 27, 1979 letter and, from its clear terms, all that Dr. Housepian advised was that, to render a new opinion that further improvement was unrealistic, he would have to see plaintiff once more since one year had elapsed from the time the surgery was performed. Standing alone, the letter does not establish the continued, uninterrupted reliance upon the physician's services by way of corrective efforts necessary under the continuous treatment doctrine *(Davis v New York,* 38 NY2d 257, 260). Thus, the situation here is readily distinguishable from that in *Richardson (supra)* and in *Waite v Abraham* (104 AD2d 97).

We also disagree with Special Term's conclusion that the limitations period had been tolled until after physical therapy ended. The record is barren of any evidence to establish any ongoing connection or association between Drs. Housepian and Downey on this case and it is undisputed that they were attending physicians who had each treated plaintiff independently, as a private patient. Although Dr. Housepian referred plaintiff to Dr. Downey, he did not direct or participate in the physical therapy. Clearly, there is no support for the conclusion that there was a unity of interest between them so as to toll the statute until after physical therapy had terminated. *(See, Florio v Cook,* 65 AD2d 548, *affd* 48 NY2d 792; *see also,*

*Coyne v Bersani, supra.)* All that Dr. Housepian did was refer the patient to another physician, plainly an insufficient nexus to render Dr. Downey's treatment imputable to Dr. Housepian for purposes of Statute of Limitations. *(See, Coyne v Bersani,* 94 AD2d 961, 962, *affd for reasons stated by App Div* 61 NY2d 939, *supra; Meath v Mishrick,* 120 AD2d 327).

Therefore, since the action as against Dr. Housepian was commenced June 4, 1981, more than 2½ years after his last treatment on November 29, 1978, it is untimely and should have been dismissed. We do agree, however, with so much of the determination which dismissed the complaint against Presbyterian. The undisputed proof in the record is that both Dr. Housepian and Dr. Downey, as independent, private physicians, were neither employed by nor united in interest with Presbyterian. Their status as regular, attending physicians, affiliated as such with the hospital, is insufficient to impute the doctors' treatment to the hospital, either in terms of liability or as a basis for extending the Statute of Limitations *(Ruane v Niagara Falls Mem. Med. Center,* 60 NY2d 908; *McDermott v Torre, supra).*

In opposing the motion for summary judgment, plaintiff failed to satisfy his burden of demonstrating the existence of affirmative proof as to an association between the hospital and these physicians other than as attending doctors, especially considering the unrefuted evidence that the physicians were self-employed and they and the hospital billed plaintiff separately for services rendered. While it was argued that plaintiff should have been afforded a further opportunity to pursue discovery proceedings, there was no explanation for the failure to proceed with relevant disclosure during the more than three-year period between commencement of the action and the motion for summary judgment *(see, Meath v Mishrick, supra).* Concur—Sandler, J. P., Carro, Asch, Milonas and Kassal, JJ.