[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[EDITORS' NOTE: SEE STARKWEATHER v. MANCHESTER MEMORIAL HOSPITAL,1993 Ct. Sup. 3530.]
MEMORANDUM OF DECISION ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This action was brought by the plaintiff, Helen Starkweather, based on her claim that Dr. Devbala Patel, a pathologist employed by the Manchester Memorial Hospital, misdiagnosed an allegedly malignant lesion on her left thigh in a biopsy report that she sent to the plaintiff's dermatologist, Dr. Stephen Romeo, in November, 1985. She alleges that as a result of her physician's reliance on that report, the malignancy was not discovered until August, 1989, when Dr. Patel examined another tissue sample at the request of Dr. Romeo and reported the presence of a malignant melanoma.
The plaintiff brought separate actions against Dr. Patel and the hospital in July, 1990 and July, 1991 which were later consolidated by the court for trial. The complaints as amended are in two counts, the first alleging medical malpractice and the second alleging an oral contractual undertaking by the defendants to provide medical services and to "accurately diagnose the plaintiff's physical condition pursuant to the appropriate standard of care . . . ." Para. 29, Second Revised Amended Complaint.
The defendants have filed identical motions for summary judgment on the ground that both counts of the complaint are governed by 52-584 of the General Statutes which states that no action for medical malpractice "may be brought more than CT Page 3535 three years from the date of the act or omission complained of. . . ." The principal ground asserted by the plaintiff in her brief (pp. 9-10) in opposition to the motion is that "[t]he defendants, physician and hospital, rendered diagnostic pathology services to the plaintiff concerning a lesion on her left thigh, beginning in November 1985 and ending in (sic) August 15, 1989."
Dr. Patel's affidavit in support of the motion states that her work in the hospital's pathology laboratory did not involve direct patient treatment, that she "did not have a doctor-patient relationship with the plaintiff . . . at any point in time," and that she "did not make any special or express contract with [her] nor [did she] make any promises, warranties or guarantees as to the evaluation of the laboratory slides." She also asserts that neither she nor the hospital's pathology department "contracted with the plaintiff to offer services other than as required by the applicable standard of care", and that apart from the November, 1985 biopsy report, her only involvement was "an examination of different tissue specimens in August, 1989" which was unrelated to the earlier alleged misdiagnosis, and which is not claimed in the complaint as a ground of either tort liability under the first count or of contractual liability under the second count.
The plaintiff states in her brief (p. 11) that Dr. Patel's "negligent failure to warn is a continuing course of conduct [and] the statute of limitations does not begin to run until the course of conduct is completed." She argues that because she was never warned by the defendant that she was exposed to the risk of developing a malignancy the statute did not begin to run until September 1989, when the presence of a malignant melanoma was first identified and disclosed to her.
The issues presented for the court's determination on the defendants' motions in these cases is whether a physician-patient relationship existed between Dr. Patel and the plaintiff and, if such a relationship is found to have existed, whether it terminated in September, 1985 when the original biopsy was taken, or whether it continued until Dr. Patel's 1989 report of her examination of the plaintiff's tissue sample. As to the first question, although Dr. Patel's affidavit attempts to negate the existence of a physician-patient relationship because she did not examine, see or treat the plaintiff, it is not necessarily required that a physician "must physically examine, CT Page 3536 treat or prescribe medication for another person in order for a physician-patient relationship to exist." Walters v. Rinker,520 N.E.2d 468 at 471 (Ind.App. 1988).
Although a consensual relationship usually exists and "the physician agrees impliedly to treat the patient in a proper manner" the physician still owes a duty of due care to the patient which "is imposed by law and is something over and above any contractual duty." Kozan v. Comstock, 270 F.2d 839, 844-45
(5th Cir. 1959). It is for this reason that most jurisdictions consider a medical malpractice action to be essentially tortious in nature unless a physician, by express contract agrees "to effect a cure or warrant that a particular result will be obtained." Id. 845; see also Camposano v. Claiborn, 2 Conn. Cir. Ct. 135.
In order to support a finding that the defendant physician was engaged in a continuing course of conduct that tolled the statute of limitations by reason of her failure to warn the plaintiff of the alleged misdiagnosis, there must be evidence of the breach of a duty that remained in existence after the commission of the original negligent act. Connell v. Colwell,214 Conn. 242, 254. In order to find that such a duty continued to exist after the act or omission relied on there must be evidence of "either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." Fichera v. Mine Hill Corp., 207 Conn. 207, 210.
Where an attending or treating physician asked a pathologist to diagnose a tumor removed from the patient's body, the pathologist's relationship to the patient "terminated when he examined the tumor and made his report." Walters v. Rinker,520 N.E.2d 468, 473 (Ind.App. 1988). Under such circumstances the medical malpractice statute of limitations is not tolled "by the primary physician's continued reliance upon a pathologist's diagnosis. . . ." Id.
The continuing nature of a diagnosis does not in itself amount to continuous treatment, and in any event, where a patient goes back to her attending physician merely to have her condition checked, such treatment cannot be imputed to a pathology laboratory in the absence of an agency or other relevant relationship between the laboratory and the patient's doctor. McDermott v. Torre, 437 N.E.2d 1108, 1112 (N.Y. 1982). CT Page 3537 "Generally, a laboratory neither has a continuing or other relevant relationship with the patient nor, as an independent contractor, does it act as an agent for the doctor or otherwise act in relevant association with the physician." Id.
In the absence of an agency or other relevant relationship between a pathologist and the patient's treating physician, or of a continuing relationship between the pathologist and the patient, any ongoing treatment of the patient by her physician does not extend the statute of limitations against a pathologist who misreads the biopsy of the patient or against the hospital in whose laboratory the pathologist is employed. Meath v. Mishrick, 503 N.E.2d 115, 116 (N.Y. 1986). In this case, Dr. Patel's affidavit establishes that her only contact with the plaintiff was in examining the tissue sample submitted by Dr. Romeo in September, 1985, and because no countervailing evidence has been offered by the plaintiff to toll the running of the statute of limitations, the motion of the defendant, Devbala Patel, is granted. Meath v. Mishrick, 501 N.Y.S.2d 350, 352
(A.D. 1986).
For the foregoing reasons, summary judgment may enter in favor of the defendant, Devbala Patel, in Docket No. 380992.
Hammer, J. CT Page 3538