■ HILDA COLONRESTO et al., Appellants, v GOOD SAMARITAN HOSPITAL et al., Defendants, and JUAN C. PELLIN, Respondent. —In a medical malpractice action to recover damages for personal injuries, etc., the plaintiffs appeal from an order of the Supreme Court, Suffolk County (Luciano, J.), dated May 20, 1985, which, upon their motion to dismiss the defendant Pellin's affirmative defense that the action was barred by the Statute of Limitations, awarded summary judgment to the defendant Pellin, on the ground that the action as to him was time barred.

Justice Niehoff has been substituted for the late Justice Gibbons *(see,* 22 NYCRR 670.2 [c]).

Ordered that the order is modified, on the law, by deleting

the provision thereof which granted summary judgment to the defendant Pellin, and substituting therefor provisions denying him summary judgment and granting the plaintiffs leave to renew their motion to dismiss the defendant Pellin's affirmative defense upon the completion of discovery. As so modified, the order is affirmed, with costs to the plaintiffs.

In this medical malpractice action, the issue which concerns us is whether the defendant Pellin was merely a referring physician who had no further relationship with the patient or with her treating physicians, or whether the physician-patient relationship was maintained during a continuous course of treatment. Unlike our colleagues in the minority, we find that neither the appellants, in their motion to dismiss Pellin's Statute of Limitations' defense, nor the defendant Pellin, upon searching the record, established entitlement to summary judgment.

On February 16, 1982, the plaintiff Hilda Colonresto (hereinafter the plaintiff) sought treatment from the defendant Dr. Juan Carlos Pellin (hereinafter the defendant). At that time he made a diagnosis and referred the plaintiff to codefendants Dr. Van Ess and Good Samaritan Hospital for surgery. She was admitted the same day and remained in the hospital until March 5, 1982.

In this action, it is the plaintiff's contention that Dr. Pellin either misdiagnosed her appendicitis, failing to perceive the immediate need for emergency surgery, or failed to communicate the emergency condition to the codefendant Van Ess. The plaintiff's bill of particulars indicates that there was a delay in performing the surgery and that the plaintiff suffered a ruptured appendix prior to surgery.

The plaintiff moved, *inter alia,* to strike the Statute of Limitations' defense from the defendant's answer. Annexed to the moving papers was an affidavit of service indicating that the defendant had been served by the Sheriff on August 28, 1984. Since the summons was not filed with the Sheriff of Suffolk County until August 21, 1984, the issue was whether the defendant Pellin's treatment of the plaintiff ceased as of February 16, 1982, more than two years and six months before August 21, 1984, or on March 5, 1982, less than two years and six months before August 21, 1984.

In his affirmation in support of the motion, the plaintiff's counsel alleged medical malpractice "during a continuous course of treatment beginning on or about February 16, 1982, up to and including March 5, 1982".

In opposition, the defendant's attorney argued that the defendant's treatment ceased on February 16, 1982, and that the plaintiff had only until August 16, 1984, to commence suit. He also stated: "If the case had undergone the appropriate discovery proceedings pursuant to the CPLR, defendant Pellin would have cross-moved for summary judgment based on the statute of limitations defense. The plaintiffs, however, did not commence this action until three months ago. Therefore, a cross-motion for summary judgment based on the statute of limitations defense would be premature. That part of the plaintiff's instant motion which seeks to strike Dr. Pellin's affirmative defense is similarly premature and, therefore, should be denied".

The affidavit of the defendant simply stated that "he saw the plaintiff, Hilda Colonresto, in his office on February 16, 1982. During that office visit, he made a diagnosis and referred said plaintiff to co-defendants Lester Van Ess, M.D. and Good Samaritan Hospital for a surgical procedure". He claimed that he is not a surgeon and did not "treat" the plaintiff during her stay at Good Samaritan Hospital. He further claimed that although he saw the plaintiff during her stay at the hospital, this was "merely a social visit", that he did not "treat" her at that time, and that *upon information and belief,* he did not bill * * * plaintiff for this social visit; nor did he make any notes or write any orders in the Good Samaritan Hospital chart".

In a reply affirmation, the plaintiff's counsel argued that the treatment received by the plaintiff during her hospital admission was "imputable" to the defendant for Statute of Limitations purposes and that the defendant's characterization of his visit to the plaintiff at Good Samaritan Hospital as purely social was "absurd".

By order dated March 15, 1985, Special Term reserved decision on the motion and notified the parties of its intention to treat the motion as one for summary judgment. The court adjourned the case to April 29, 1985. By that date, neither of the parties had submitted any additional proof, and by order dated May 20, 1985, Special Term granted summary judgment to the defendant.

The award of summary judgment to the defendant, upon a record which is absolutely silent as to his relationship with his codefendants, and which claims that he made a "social" visit to his patient in the hospital, was error. An award of summary judgment to either of the parties prior to disclosure would be premature.

"Summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a material and triable issue of fact" *(Krupp v Aetna Life & Cas. Co.,* 103 AD2d 252, 261). A defendant moving for summary judgment has the initial burden of coming forward with admissible evidence, such as affidavits by persons having knowledge of the facts, reciting the material facts and showing that the cause of action has no merit *(GTF Mktg. v Colonial Aluminum Sales,* 66 NY2d 965). " 'To obtain summary judgment it is necessary that the movant establish his * * * defense "sufficiently to warrant the court as a matter of law in directing judgment" in his favor (CPLR 3212, subd [b])' " *(Krupp v Aetna Life & Cas. Co., supra,* at 261, quoting from *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065, 1067).

The record in this case is inadequate to support a determination that either party is entitled to summary judgment. First, there is an issue as to whether the continuous treatment of the codefendant treating physicians can be imputed to the diagnosing physician, the defendant.

At bar, the record is silent as to whether there existed any professional relationship or consultation between the defendant and his codefendants Dr. Van Ess and the hospital, so that the continuous treatment of the plaintiff by the codefendants might be imputed to the defendant *(see, Meath v Mishrick,* 68 NY2d 992; *McDermott v Torre,* 56 NY2d 399). Evidence of such a relationship, however, would be peculiarly within the control of the defendant and his codefendants and the plaintiff should have an opportunity to conduct discovery (CPLR 3212 [f]; *Terranova v Emil,* 20 NY2d 493). Since the action had only been pending for three months at the time the motion was made, it cannot fairly be said that the plaintiff had not properly availed herself of the opportunity to conduct discovery proceedings to procure information in the defendant's control which might shed light on this issue *(cf., Meath v Mishrick, supra).* While it is true that Special Term did adjourn the motion for approximately one month upon announcing its intention to treat it as one for summary judgment to permit the parties to submit additional proof, such direction, absent a contrary indication, should be construed as referring to producing evidence already available to them and not as a mandate to conduct expedited discovery proceedings.

Moreover, in addition to the need for discovery as to the nature of the relationship between the defendant and his codefendants, in light of the defendant's admission that he

visited the plaintiff on some unspecified day during the course of her hospital stay, a visit which he characterized as being purely social, a potential factual question exists as to the purpose and nature of that visit, which the plaintiff should be permitted to explore in discovery.

In sum, modification is warranted. It is premature at this prediscovery stage of the action to determine whether the defendant either actually or constructively participated in a continuous course of treatment of the plaintiff, such that summary judgment, either dismissing his Statute of Limitations' defense or in his favor, would be appropriate. Brown, Niehoff and Rubin, JJ., concur.

Eiber, J., concurs in part and dissents in part and votes to affirm the order appealed from, in the following memorandum in which Thompson, J. P., concurs. This appeal presents an attempt by the plaintiffs to salvage a medical malpractice action against a physician by invoking the continuous treatment doctrine to toll the Statute of Limitations.

The present record discloses that the plaintiff Hilda Colonresto consulted with the defendant, Dr. Juan Carlos Pellin, on February 16, 1982. Dr. Pellin, who is not a surgeon, concluded that the patient was in need of surgery and, therefore, immediately referred her to the codefendants, Dr. Lester Van Ess and Good Samaritan Hospital, where she underwent an emergency appendectomy. Notably, Mrs. Colonresto's admission to Good Samaritan Hospital occurred on the very day that she consulted Dr. Pellin regarding her condition.

On appeal to this court, the plaintiffs contend that since Dr. Pellin "procured" the hospitalization of Mrs. Colonresto, the negligence of each of the codefendants may be imputed to him, for accrual purposes, regardless of whether or not he otherwise participated in her care and treatment during that time. I cannot accept this argument nor can I concur in the majority's rather broad conceptualization of the continuous treatment doctrine.

In the seminal case of *Borgia v City of New York* (12 NY2d 151, 157), the Court of Appeals explained that continuous treatment means treatment "for the same or related illnesses or injuries, continuing after the alleged acts of malpractice, not mere continuity of a general physician-patient relationship" *(see also, McDermott v Torre,* 56 NY2d 399). In order for the exception to be properly invoked, there must be some showing that the defendant sought to be charged provided continuous care and treatment, either directly or through a

subsequent treating physician *(see, Watkins v Fromm,* 108 AD2d 233). Moreover, although a defendant who interposes the Statute of Limitations as an affirmative defense bears the burden of proving its applicability, a plaintiff who relies upon an exception thereto must prove that he comes within the exception *(see, Connell v Hayden,* 83 AD2d 30, 39).

The record in the instant case is utterly devoid of proof that the defendant Dr. Pellin directly treated Mrs. Colonresto at any time after their consultation on February 16, 1982. Indeed, the plaintiffs admitted in their bill of particulars that Dr. Pellin's treatment of Mrs. Colonresto was limited to the February 16 office visit and that the acts and omissions which are alleged to constitute malpractice on the part of Dr. Pellin occurred exclusively on this date. The only evidence of any contact between Mrs. Colonresto and Dr. Pellin subsequent to their initial consultation is found in Dr. Pellin's affidavit, wherein he admitted that he once visited Mrs. Colonresto while she was hospitalized on a purely social basis, to accommodate a friend. Dr. Pellin further averred that he did not treat Mrs. Colonresto during the period of her hospitalization at Good Samaritan Hospital, nor did he perform any acts on the occasion of their social visit or at any time thereafter which could conceivably support the application of the continuous treatment doctrine against him.

In their opposition papers, the plaintiffs simply characterized Dr. Pellin's sworn assertions as "absurd", but offered noting to refute the information he provided, despite the fact that it was the plaintiffs' responsibility to lay bare their proof and to demonstrate the validity of their claims *(see, Zuckerman v City of New York,* 49 NY2d 557; *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065; *Tepper v Feldman,* 117 AD2d 595; *De Boer v Lloyd's Shopping Center,* 115 AD2d 633). The affidavit submitted by the plaintiffs is singularly silent as to what form of treatment, if any, was rendered on the occasion of the only alleged contact between the parties subsequent to their initial consultation. Furthermore, while the majority heavily emphasizes that Dr. Pellin's assertion that he did not bill the plaintiffs for this social visit was made "upon information and belief", the fact nevertheless remains that his assertions stand uncontradicted. Clearly, the rendition of a bill for any services rendered on the date of his visit would be within the knowledge and/or possession of the plaintiffs and it is equally clear to me that the plaintiffs have simply failed to sustain their burden of demonstrating the existence of any triable issue of fact with respect to whether any direct treat-

ment was rendered by Dr. Pellin on a date subsequent to their consultation in February 1982. If Mrs. Colonresto had actually been examined or treated by Dr. Pellin during her hospitalization, she surely would have been able to tender proof far more compelling than the remark "absurd", to which no jural significance could possibly attach. The evidentiary deficiencies which the majority has encountered in this record, in my view, are wholly attributable to the plaintiffs, who have offered noting to support their claim.

In stark contrast, Dr. Pellin's affidavit recites, without contradiction, the operative facts of this case. After reviewing these facts, it becomes apparent that Dr. Pellin's "treatment" of Mrs. Colonresto effectively terminated when he realized that she required a surgical procedure which he was unable to perform. He, therefore, promptly referred her to the codefendants so that she could receive the necessary medical care. While it is true that the absence of physical or personal contact between the physician and patient is not necessarily dispositive in determining whether there has been a continuous course of treatment, there must, at the very least, be some sort of "uninterrupted reliance upon the physician's observation, directions, concern, and responsibility for overseeing the patient's progress" *(see, Richardson v Orentreich,* 64 NY2d 896, 899). In the case at bar, it appears that total responsibility for Mrs. Colonresto's care and treatment was entrusted to the codefendants when they accepted the referral, and there is absolutely no indication in the record that Dr. Pellin continued to participate and act as her physician, constructively or otherwise. The instant matter is a situation where the physicians involved are "independent professionals, with no relationship other than referrals for matters outside their field of expertise", and the plaintiffs' attempt to invoke the continuous treatment exception to toll the Statute of Limitations, in my opinion, should be rejected *(see, Swartz v Karlan,* 107 AD2d 801, 803).

"[W]here the relationship between the patient and the provider of treatment has been severed, or where continuing treatment for the same or related illness or injury, after the alleged malpractice, has been terminated, the continuous treatment doctrine loses its efficacy; there is simply no reason for a patient to defer the commencement of legal action to recover damages for the alleged malpractice" *(see, Grellet v City of New York,* 118 AD2d 141, 147-148). This rationale is particularly applicable to the facts at bar inasmuch as the acts of malpractice for which the plaintiffs seek to hold Dr.

Pellin directly accountable were alleged to have occurred on February 16, 1982, and not during Mrs. Colonresto's subsequent hospitalization.

Mrs. Colonresto, at the recommendation of Dr. Pellin, placed herself in the care of another physician who was able to perform the surgical procedure that she evidently needed. This physician, the codefendant Van Ess, was, from then on, responsible for whatever treatment he provided. No facts have been alleged by the plaintiffs to even suggest that Dr. Pellin had any input in the treatment rendered by the codefendants subsequent to the referral, or that Dr. Pellin had any legal relationship with those who provided medical services after February 16, 1982 *(see, Meath v Mishrick,* 68 NY2d 992). In this regard, it should be noted that "[i]t is no longer sufficient for imputation purposes to demonstrate that the treating doctor relied on somebody else's diagnosis. Rather, a continued relationship must be shown between the treating doctor and the misdiagnosing defendant in order to prolong the statute of limitations against the latter" *(see,* McLaughlin, Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 214-a [1987 Pocket Part], at 277; *see also, Ruane v Niagara Falls Mem. Med. Center,* 91 AD2d 1176, *affd* 60 NY2d 908; *Florio v Cook,* 65 AD2d 548, *affd* 48 NY2d 792; *Kimball v Scors,* 59 AD2d 984, *lv denied* 43 NY2d 648).

The record before us is utterly bereft of evidence that anything said or done during Mrs. Colonresto's consultation with Dr. Pellin was subsequently relied upon by the codefendants. Along a similar vein, the absence of any evidence, or even an allegation by the plaintiffs, that there was a legal relationship between Dr. Pellin and the other named defendants, also proves fatal to the plaintiffs' claims *(see, Coyne v Bersani,* 94 AD2d 961, *affd* 61 NY2d 939). Confronted by the factual allegation that the relationship between Dr. Pellin and the codefendants involved nothing more than a referral, it was incumbent upon the plaintiffs to set forth some proof tending to establish the contrary, i.e., that the relationship between the defendants was a continuous one which involved mutual responsibility for Mrs. Colonresto's care and treatment. Although the majority is of the view that summary disposition of this case would be premature and that the plaintiffs were somehow deprived of the opportunity to engage in discovery, it bears noting that Special Term initially reserved decision on this motion and adjourned the instant case for more than a month in order to permit the parties to submit additional proof. It appears, however, that the plain-

tiffs failed to take advantage of this opportunity and, instead, were content to rely on the papers previously submitted.

In conclusion, the instant matter, I believe, falls far outside of the scope of the rule originally contemplated by the Court of Appeals in *Borgia v City of New York* (12 NY2d 151, *supra).* Dr. Pellin did not treat or continue to treat Mrs. Colonresto for the same or a related illness after he informed her on February 16, 1982, that she was in need of surgery. Referral alone, without any allegation or proof of the existence of an ongoing relationship between Dr. Pellin and the codefendants and without any evidence of participation by Dr. Pellin in the course of treatment subsequently rendered, was clearly insufficient to toll the running of the Statute of Limitations until Mrs. Colonresto's discharge from the hospital *(see, Swartz v Karlan,* 107 AD2d 801, *supra; Florio v Cook, supra).*

Finally, as the court noted in *Coyne v Bersani (supra,* at 962): "[s]ince defendant's treatment of plaintiff had terminated, the policy rationale underlying the continuous treatment doctrine of maintaining the physician-patient relationship to provide the most efficacious medical care will not be served by the application of the doctrine * * * Additionally, as a policy consideration, the practice of forwarding a patient's medical file to another physician * * * should not be deterred by the possibility that such action may render the subsequent physician's treatment imputable to the primary physician".

I believe similar considerations militate against imputing constructive participation in subsequent treatment solely on the basis of a referral to other physicians, and I, therefore, vote to affirm the order appealed from.