Titone, J.
(concurring). I agree with the majority that plaintiff failed to establish that he was continuously treated by neuromuscular specialists affiliated with defendant Elmhurst General Hospital for the entire 11-year period in issue. I write separately only to emphasize my own serious questions as to whether the most fundamental requirement of the continuous-treatment doctrine —i.e., an unbroken course of treatment by a particular practitioner or closely affiliated group of practitioners — was satisfied here.
The Statute of Limitations on a medical malpractice claim is tolled when "there is continuous treatment for the same illness, injury or condition which gave rise to the * * * act, omission or failure [complained of].” (CPLR 214-a.) The policy underlying the doctrine "seeks to maintain the physician-patient relationship in the belief that the most efficacious medical care will be maintained when the attending physician remains on a case from onset to cure” (McDermott v Torre, 56 NY2d 399, 408; see, Borgia v City of New York, 12 NY2d 151).
This Court has repeatedly held that where the continuing treatment is provided by someone other than the practitioner alleged to have been negligent, there must be " 'an agency or other relevant relationship’ ” between the two (Meath v Mishrick, 68 NY2d 992, 994, quoting McDermott v Torre, supra, at 403; see, Florio v Cook, 48 NY2d 792, affg 65 AD2d 548). Further, we have explicitly rejected the notion that the practitioners’ common affiliation with a hospital is sufficient to constitute the requisite "relevant relationship” (Meath v Mishrick, supra; see also, Ruane v Niagara Falls Mem. Med. Ctr., 60 NY2d 908). Finally, this Court has held that the necessary relationship is not established by a mere referral from the purportedly negligent practitioner to another practitioner who is to furnish ongoing treatment (Floria v Cook, supra; see also, Meath v Mishrick, supra, at 995 [overruling Fonda v Paulsen, 46 AD2d 540]).
These holdings demonstrate that the application of the "continuing treatment” toll to the present case is, at best, dubious. The alleged malpractice here was committed by practitioners affiliated with the obstetrical clinic operated by Elmhurst General Hospital. The "continuous treatment” on which plaintiff’s claim for a statutory toll is predicated, however, is that provided by Dr. Kaplan and the entirely separate *738 pediatric neuromuscular clinic operated by Elmhurst. Accordingly, if the continuous-treatment doctrine is to be applied on these facts, plaintiff must be able to identify a nexus between the two clinics that could be deemed a "relevant relationship.”
The fact that the two sets of practitioners are both affiliated with Elmhurst is clearly not a sufficient "relevant relationship” under the case law (see, Meath v Mishrick, supra). Further, the fact that the allegedly negligent obstetrical practitioners referred plaintiff to the neuromuscular clinic for ongoing treatment cannot establish the requisite relationship, because "no master-servant or principal-agent relationship” exists (Floria v Cook, 65 AD2d, at 548, supra). The only remaining reason for applying the continuous-treatment rule to these facts would be that both treating clinics were operated by the same umbrella entity, Elmhurst General Hospital —the entity that was named as a party defendant.
However superficially appealing this factor may be, it cannot be accepted uncritically as a basis for applying the continuous-treatment rule. First, treating the hospital as a unitary provider for purposes of the continuous-treatment doctrine is questionable because it could lead to circumvention of the Meath v Mishrick (supra) principle that the practitioners’ common affiliation with a particular hospital cannot furnish the necessary continuity. Second, the approach is troubling because it would lead to the application of the continuous-treatment toll in cases where its purposes would not necessarily be advanced. A hospital may fairly be held liable for the negligent acts of its clinics under the traditional respondeat superior principles. However, a hospital is an impersonal entity that can provide medical care only in the abstract sense and is certainly not capable of forming the intimate one-on-one physician-patient relationship that the continuing-treatment doctrine was designed to protect (see, Nykorchuck v Henriques, 78 NY2d 255, 258). Finally, permitting use of the continuous-treatment toll where the injured patient has been treated by separate clinics that happen to be operated by the same large medical institution would inevitably lead to differential treatment for those who rely on such institutions as their primary health-care providers and those who rely on private providers operating individually or in small, professionally homogenous groups.* Whether such differential treat *739 ment is a sensible and legally acceptable outcome is a weighty question that requires considerably more thought and analysis.
Unfortunately, the posture in which this case has reached us prevents the Court from considering the legal viability of plaintiffs continuous-treatment-by-an-institution theory. The issue is outside of the Court’s reviewing sphere for the simple reason that defendants have elected not to raise it. I would hope that, notwithstanding this inexplicable choice by these litigants, the Court’s opinion in this case will not be read as an endorsement of plaintiffs continuous-treatment theory. Rather, the Court’s decision should be read for what it is: a narrow determination that, even assuming the rule’s theoretical applicability, the facts necessary to establish treatment during the entire relevant period were not sufficiently alleged. Because I agree with that narrow conclusion, I concur in both the rationale and the result.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur in Per Curiam opinion; Judge Titone concurs in a separate concurring opinion.
Order affirmed, with costs.

 Plaintiffs approach could also have implications for those who receive their health care through health maintenance organizations.