■ MICHAEL INTELMANN, Respondent, v PETER DELUCA et al., Defendants, and DOMINICK GADALETA et al., Appellants. [813 NYS2d 199]—

In an action, inter alia, to recover damages for medical malpractice, etc., the defendants Dominick Gadaleta and North Shore University Hospital separately appeal, as limited by their respective briefs, from so much of an order of the Supreme Court, Nassau County (Jonas, J.), dated October 26, 2004, as denied their respective motions pursuant to CPLR 3211 (a) (5) to dismiss the complaint insofar as asserted against them as time-barred pursuant to CPLR 214-a.

Ordered that the order is affirmed insofar as appealed from, with one bill of costs.

The decedent, Darlene Intelmann, sought treatment from Peter DeLuca, a pulmonary specialist, for respiratory problems. Mrs. Intelmann was then referred to the appellant Dominick Gadaleta, who specialized in bariatric surgery, to evaluate whether she was a candidate for a gastric bypass operation due

to her obesity. It is alleged that DeLuca and Gadaleta consulted with each other for several months until a determination was made by Dr. DeLuca that Mrs. Intelmann was in optimal condition for the surgery.

Immediately after Dr. Gadaleta performed the gastric bypass surgery on December 6, 2000 at North Shore University Hospital (hereinafter NSUH), Mrs. Intelmann suffered postoperative complications with her breathing. Mrs. Intelmann was intubated to assist her breathing and a feeding tube was inserted to provide nourishment. On January 5, 2001 Mrs. Intelmann, at her family's request, was transferred to Huntington Hospital so that Dr. DeLuca could manage her respiratory condition. On three separate occasions (Jan. 29, 2001, Feb. 1, 2001 and Mar. 8, 2001), Mrs. Intelmann was transferred back to NSUH to replace the feeding tube inserted after the gastric bypass operation. Dr. Gadaleta was consulted regarding the January 29, 2001 transfer and arranged for Mrs. Intelmann's transportation. Mrs. Intelmann remained in Dr. DeLuca's care until April 28, 2001 and eventually was transferred to a nursing home, where she died on July 28, 2001.

The plaintiff commenced this action more than two and one-half years after the transfer on January 5, 2001 from NSUH to Huntington Hospital. NSUH and Gadaleta separately moved to dismiss the complaint insofar as asserted against them on the ground that it was time-barred. In opposition, the plaintiff contended that the continuous treatment doctrine tolled the statute of limitations during the period after the decedent's transfer to Huntington Hospital. The Supreme Court determined that the continuous treatment doctrine applied and tolled the statute of limitations until January 29, 2001 for Dr. Gadaleta, and March 8, 2001 for NSUH. We affirm.

A medical malpractice action "must be commenced within two years and six months of the act, omission or failure complained of or [the date of the] last treatment where there is a continuous [course of] treatment" for the same condition or complaint (CPLR 214-a; *see Young v New York City Health & Hosps. Corp.,* 91 NY2d 291, 295 [1998]). Contrary to the defendants' claim, the decedent's treatment had not been completed at the time of the transfer. The decedent's return to NSUH with Dr. Gadaleta's authorization in January 29, 2001 was part of her continued treatment by these defendants and this action was commenced within two and one-half years of that date (*see* CPLR 214-a). Moreover, the postoperative care received by the decedent at Huntington Hospital was a continuation of the course of treatment for the condition which

originally gave rise to the alleged malpractice. This provided a sufficient nexus between Gadaleta and NSUH, and DeLuca to toll the statute of limitations (*cf. Young v New York City Health & Hosps. Corp., supra* at 296; *McDermott v Torre,* 56 NY2d 399, 405-406 [1982]). Crane, J.P., Krausman, Luciano and Fisher, JJ., concur.