Dookhie v Woo (2020 NY Slip Op 00975)





Dookhie v Woo


2020 NY Slip Op 00975


Decided on February 11, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 11, 2020

Manzanet-Daniels, J.P., Gesmer, Oing, Moulton, González, JJ.


10821A 10821

[*1] Brunette Dookhie, etc., Plaintiff-Appellant,
v
Danny Woo, M.D., et al., Defendants-Respondents, John Doe, M.D., et al., Defendants.


Hasapidis Law Offices, Scarsdale (Annette G. Hasapidis of counsel), for appellant.
Shaub, Ahmuty, Citrin & Spratt, LLP, Lake Success (Nicholas Tam of counsel), for respondents.



Orders, Supreme Court, Bronx County (Joseph E. Capella, J.), entered July 9, 2018 and October 10, 2018, which granted the motion of defendants Danny Woo, M.D. and Peter K. Keller, M.D., P.C. d/b/a Williamsbridge Cardiology (Keller) to dismiss the complaint as time-barred pursuant to CPLR 3211(a)(5) and 214-a, and, insofar as appealed from as limited by the briefs, denied plaintiff's motion for leave to renew, respectively, unanimously reversed, on the law, without costs, and the motion to dismiss denied.
On this record, an issue of fact exists as to the last date on which defendant Dr. Woo treated the decedent, and thus, as to when the applicable statute of limitations began running. We accordingly reverse and reinstate the complaint.
Beginning in 1999, Dr. Woo treated the decedent for various issues including hypertension, high cholesterol, back pain, insomnia, and fatigue.
On April 6, 2006, the decedent underwent an MRI of his lumbar spine. The resulting report set forth various findings, including multilevel degenerative changes. The report also stated: "A 2.9 cm x 1.9 cm right renal cyst is seen. There is a 2.8 cm x 2.7 cm heterogenous right renal upper pole slightly exophytic focus that is not well characterized on this examination." Although the radiologist recommended "further evaluation by renal ultrasound," Dr. Woo did not refer the decedent to a nephrologist, nor did he discuss the findings of the MRI with him. Dr. Woo testified that he did not consider the findings regarding the renal mass to be abnormal and did not in any event associate them with the decedent's back pain.
The decedent continued to suffer from hypertension and to complain of back pain. On April 12, 2011, he was admitted to the Westchester Square emergency room [FN1] complaining of "right flank pain." Imaging revealed a mass in the upper pole of the decedent's right kidney that was suggestive of renal cancer. Dr. Woo discharged the decedent on April 13, 2011 with instructions to follow up with physicians at Cornell Hospital for further evaluation of the renal mass.
On April 25, 2011, the decedent's right kidney was removed by a surgeon at Montefiore Medical Center. The decedent underwent further surgery at Montefiore on May 31, 2011 to remove a lung nodule. In addition, he underwent chemotherapy at St. Luke's/Roosevelt Hospital Center.
The decedent was admitted to Westchester Square on July 2, 2012 and discharged by Dr. Woo on July 9, 2012. In his discharge report, Dr. Woo noted that the decedent had been treated for "failure to thrive." Dr. Woo also noted: "From an oncology standpoint, [the decedent] was end stage and at this point in time conservative therapy, which included pain management and placement of a feed tube[,] were advised." Dr. Woo testified that the decedent's failure to thrive was attributable to the status of his renal cancer. He instructed the decedent to follow up with him as an outpatient.
On July 24, 2012, Dr. Woo wrote a home health certification and plan of treatment for the decedent that referenced the decedent's renal cancer. On July 25, 2012, Dr. Woo wrote a letter stating that, after examining the decedent, he had determined that the decedent was suffering from renal cancer and required a wheelchair, seatbelt, and leg rest. Dr. Woo prescribed a wheelchair on July 27, 2012. On August 28, 2012, the decedent died from renal cancer.
On August 8, 2014, plaintiff sued Dr. Woo and other defendants, asserting medical malpractice and related causes of action [FN2]. Plaintiff alleges, essentially, that Dr. Woo, a member of defendant Peter K. Keller, M.D., P.C., negligently ignored the kidney lesion noted in the 2006 MRI and that his negligence resulted in delayed diagnosis of the decedent's renal cancer.
After the note of issue was filed, defendants moved to dismiss the complaint under CPLR 3211(a)(5), arguing that plaintiff's claims were barred by the statute of limitations. In support, defendants relied on an affirmation by Jerry Gliklich, M.D. Dr. Gliklich opined that Dr. Woo did not treat the decedent for renal cysts or renal cell carcinoma before the April 2011 diagnosis of renal cell carcinoma or provide any course of treatment for same during the period of alleged negligence between 2006 and 2012. Dr. Gliklich opined that before April 2011, the decedent did not once present to Dr. Woo with any classic clinical signs of renal cysts or renal carcinoma. He opined that "there is no clinical correlation between [the] decedent's renal cysts or renal cell carcinoma and the decedent's complaints of musculoskeletal back pain," which he ascribed to the decedent's degenerative spinal condition. He conceded that "flank pain" may be indicative of renal cysts or renal cell carcinoma, but opined that the decedent's back pain was in "an anatomically distinct location" from that associated with renal cell carcinoma.
Plaintiff opposed, arguing that Dr. Woo continuously treated the decedent for symptoms of renal cysts and renal cell carcinoma, namely back pain, insomnia caused by back pain, and hypertension. Plaintiff asserted that there were issues of fact as to whether Dr. Woo was treating the decedent for symptoms associated with his renal cell cancer, and "whether the continuous treatment doctrine applies to toll the statute of limitations until the last date of treatment, July 9, 2012 (and even after said date, the plan was for Decedent to follow up with Dr. Woo)."
Plaintiffs' expert, Dr. Alan Feit, opined that Dr. Woo departed from accepted medical practice in treating the decedent's symptoms of back pain, hypertension, and insomnia, all of which were symptoms of and related to renal cell carcinoma.
Dr. Feit opined that Dr. Woo departed from the standard of care when he failed to follow the recommendation of the radiologist who interpreted the April 2006 MRI report that the decedent undergo "further evaluation by renal ultrasound," given the findings of a "right renal cyst" and "heterogenous right renal upper pole," that was not well characterized on the examination.
Dr. Feit noted that while hypertension alone may not raise suspicion of renal cancer, hypertension in conjunction with MRI findings of a renal mass warranted consideration of renal carcinoma as a cause of the hypertension. Dr. Feit noted that the decedent's hypertension resolved after his kidney was removed.
Dr. Feit opined that Dr. Woo rendered treatment to the decedent for his renal mass or renal carcinoma when he prescribed medication for the decedent's back pain. Dr. Feit explained that "[r]enal cancer can present with back pain that is not well described and can be generalized" and when "described as more general back pain, it can mean that the mass or tumor has gone [*2]beyond an area and may have metastasized the disease in the bone." Dr. Feit noted that Dr. Woo had prescribed sleeping aids to the decedent when he complained that his back pain prevented him from sleeping.
The motion court granted Dr. Woo's motion to dismiss the complaint. The court found that defendants met their burden on the motion because there was no dispute that the action was commenced more than 2 ½ years after the alleged malpractice, namely, Dr. Woo's failure to order the renal ultrasound as recommended in the 2006 MRI report. The court found that plaintiff, in turn, failed to show that the statute of limitations had been tolled by the continuous treatment doctrine. The court observed that plaintiff's expert did not discuss Dr. Woo's treatment of the decedent in 2012: the evaluation for failure to thrive on July 2, 2012, and the wheelchair prescription on July 25, 2013. The court stated that "[a]s the expert's affidavit makes no reference to either of these July [2012] dates, this court can only conclude that the continuous treatment doctrine tolled the statute of limitations through October 2013, which is 2½ years after April 2011."
Plaintiff moved for leave to renew. She asserted that her expert did not address Dr. Woo's treatment of the decedent in 2012 because defendants never argued that the July 2012 treatment was not related to the decedent's cancer; indeed, defendants conceded and Dr. Woo testified that the treatment in 2012 was related to the decedent's renal cancer. Accordingly, plaintiff asserted, her expert should be allowed to address that treatment. On her motion, plaintiff submitted another affirmation by Dr. Feit.
In the new affirmation, Dr. Feit acknowledged that his earlier affirmation only "addressed the continuous treatment rendered by Dr. Woo from 1999 to 2011," but noted that "[t]here were admissions by Dr. Woo as to the treatment he gave [the decedent] in 2012." Dr. Feit stated that he was "in agreement with Dr. Woo[,] who testified that the treatment he provided in July 2012 was related to [the decedent's] kidney cancer." Dr. Feit explained that it was common for patients suffering from renal cell carcinoma to have symptoms of failure to thrive with diminished appetite and to require medical care and treatment such as the treatment given during the decedent's July 2012 hospitalization. Dr. Feit stated that "Dr. Woo's care then continued as he prescribed medical care at the end of July 2012 in home health certification plans (in or about July 24th, 2012), a medical treatment letter (July 25, 2012) and prescription for a wheelchair (dated July 27th 2012)." Dr. Feit opined that "[a]ll this treatment was for continued symptoms related to . . . renal cell carcinoma."
Defendants opposed, arguing that plaintiff failed to offer any new facts or a reasonable excuse for failing to present those facts so as to justify renewal. Defendants argued that Dr. Woo's deposition testimony was before the court on their motion to dismiss, and that Dr. Feit's additional affirmation was merely an attempt to cure plaintiff's deficient opposition to the motion.
The motion court summarily denied plaintiff's motion for leave to renew defendants' motion to dismiss.
We now reverse and reinstate the complaint. On this record, a triable issue of fact exists as to whether the statute of limitations was tolled by the continuous treatment doctrine.
An action for medical malpractice must be commenced within
2½ years of the date of accrual (CPLR 214-a). Under the continuing treatment doctrine, the statutory limitation period is stayed "when the course of treatment which includes the wrongful acts or omissions has run continuously and is related to the same original condition or complaint" (McDermott v Torre, 56 NY2d 399, 405 [1982] [internal quotation marks omitted]; see Wilson v Southampton Urgent Med. Care, P.C., 112 AD3d 499, 500-501 [1st Dept 2013]). Where, as here, a malpractice claim is predicated upon an alleged failure to properly diagnose a condition, "the continuous treatment doctrine may apply as long as the symptoms being treated indicate the presence of that condition" (Simons v Bassett Health Care, 73 AD3d 1252, 1254 [3d Dept 2010]; Wilson, 112 AD3d at 500).
Plaintiff raised an issue of fact as to whether Dr. Woo continuously treated the decedent for conditions related to renal cell carcinoma. Plaintiff's expert, Dr. Feit, opined that Dr. Woo treated the decedent for symptoms of back pain, hypertension, and insomnia, all of which were [*3]symptoms of and related to renal cell carcinoma, a diagnosis that should have been considered given the findings in the 2006 MRI of a renal mass.
Plaintiff sufficiently established that such treatment continued through the decedent's hospitalization in July 2012. Notably, Dr. Woo authored the decedent's discharge summary from the hospital. Under "Hospital Course," Dr. Woo noted that "[f]rom an oncology standpoint, [the decedent] was end stage," and conservative therapy, including pain management and placement of a feeding tube, were advised. The decedent was instructed to follow up with Dr. Woo as an outpatient. On July 25, 2012, Dr. Woo wrote a letter "to whom it may concern" ordering a wheel chair and home care for the decedent given his debilitated condition following hospitalization for renal cancer.
Dr. Woo testified that the decedent was hospitalized for failure to thrive attributable "[t]o the status of his [renal cell] cancer." Indeed, the decedent died — from renal cell carcinoma — less than one month later. Defendants' argument that the "failure to thrive" bore no relation to the decedent's cancer treatment borders on specious. (It should be noted that this argument was raised for the first time on reply, and for that reason should not have been considered, let alone credited.)
Under the circumstances, expert testimony was unnecessary to a conclusion that Dr. Woo treated the decedent for renal cell carcinoma in July 2012 (see Matter of Joshua Hezekiah B. [Edgar B.], 77 AD3d 441, 442 [1st Dept 2010], lv denied 15 NY3d 716 [2010]).
The one-year-and-three month gap between the April 2011 visit and the July 2012 note does not preclude application of the continuous treatment doctrine (see Hilts v FF Thompson Health Sys., Inc., 78 AD3d 1689, 1691-1692 [4th Dept 2010] [reinstating complaint where the plaintiff's expert established that the plaintiff's complaints of headaches dating back to an office visit in 1996 were related to the aneurysm she sustained in 2003]).
The motion for renewal should in any event have been granted. It was not until reply that defendants contended, for the first time, and notwithstanding Dr. Woo's records and testimony, that the July 2012 treatment was unrelated to the decedent's renal cancer. A party's submission of new evidence or argument in reply on the underlying motion constitutes reasonable
justification for granting renewal (see Schenectady Steel Co., Inc. v Meyer Contr. Corp., 73 AD3d 1013, 1015-1016 [2d Dept 2010]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: FEBRUARY 11, 2020
CLERK



Footnotes

Footnote 1: Westchester Square closed in 2013 and its records pertaining to the decedent were destroyed in a fire.

Footnote 2: There is no indication that the other defendants — John Doe, M.D. and ABC Company — have appeared in this action.